UNITED STATES of America

v.

Maureen MURPHY.

No. CR–85–199.

United States District Court,
E.D. New York.

Dec. 20, 1985.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., Robert M. Stolz, Asst. U.S. Atty., Brooklyn, N.Y., for U.S.

Steven Kimelman, New York City, for Maureen Murphy.

## SENTENCING OPINION

WEINSTEIN, Chief Judge.

The sentencing of Maureen Murphy requires, in the court's opinion, a sentence not heretofore used in this District and almost never used in the country in the federal court. It is used elsewhere in the world and is considered by some to be highly objectionable. The difference, however, is that in other countries it is used to repress political dissent and before trial. Here it will be used after a full trial where the defendant has been found guilty of a serious offense.

The penalty is home detention. Respect for public opinion, the need to explain the reasons for the sentence to the defendant and others and the desirability of providing data for the Federal Sentencing Commission just appointed by the President require a more extensive statement than usual.

After a full trial Ms. Murphy was found guilty of a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), mail fraud and obstruction of justice charges. For many years as confidential secretary to Norman Teitler, a lawyer, she assisted in committing frauds against insurance companies and helped obtain inflated medical and other expenses following auto accidents. When the Grand Jury began its investigation she attempted to induce key witnesses to change their testimony.

Obviously these crimes are serious. They threaten the very foundation of the effective administration of justice in polluting the sources of information available to the Grand Jury. In addition, the corruption of the civil litigation process by lawyers, doctors and others cannot, and will not, be condoned or tolerated.

A sentence such as this must be approached with some general philosophical background.

The prison population in this country is approaching one-half million. Cost estimates of $30,000 a year and upward per prisoner are common. The direct costs are thus in the order of $15 billion a year.

All agree that longer prison terms, and imprisonment for more and more persons cannot be borne indefinitely. Other controls to prevent crime, social policies to avoid criminality and alternative punishments are essential.

The goals of punishment are incapacitation, rehabilitation, specific deterrence of the individual defendant, general deterrence of those who might commit crimes without the threat of punishment and, finally, the related goals of providing an outlet for the expression of strong disapproval of unacceptable conduct together with the catharsis of a specific statement of public condemnation together with punishment.

Incapacitation of those who are dangerous must, of course, continue to be our policy.

Rehabilitation in general takes place more effectively outside prison walls. Federal probation officers in this District have the resources and skill to exercise strict control, supply training and help with jobs. Cutting the person off from family, friends and jobs during this process is counterproductive.

Specific deterrence is important, but where it does not require incapacitation, particularly among non-professional criminals, it can be accomplished without long

incarceration. A taste of jail may be enough under such circumstances.

General deterrence is a factor we know little about. For most crimes of white collar corruption it may not be necessary to provide substantial prison terms. Heavy fines, disgrace and loss of licenses to practice professions will help deter. More important is vigilance of those who should be apprehending and prosecuting the white collar criminals. Putting our money in swift and sure prosecution rather than in prison terms appears to be cost effective.

With these principles in mind, we turn to the defendant's background. Already related are the nature of her crimes. In total, she is subject to $56,000 in fines and 50 years in prison. She is now 35 years old, a high school graduate. She attended local parochial schools. She was raised in a close-knit, harmonious and religious family setting by hard-working parents. Her father was a New York City Sanitation Department Engineer. She studied at secretarial schools and is, by all accounts, an excellent and bright worker who has always been steadily employed. Her assets are $150.00 in a savings account and a 1976 Pontiac. She has never been married and lives alone.

Her attorney and she, of course, plead for mercy. The government, in a letter dated September 20, 1975, has taken the unusual step in this District of urging a term of incarceration and the maximum allowable fine. It writes:

> Maureen Murphy was not simply a secretary following instructions of her boss. The evidence showed Maureen Murphy to be a longtime, trusted member of this criminal venture, who attempted to protect that venture when it came under investigation by obstructing the work of the grand jury.

> We emphasize the seriousness of these offenses and the flagrantly corrupt nature of the enterprise for which this defendant worked for so many years. This case involved a corruption of the legal process by those charged with its protection. Maureen Murphy was a willing, knowing and active participant in that corruption. Accordingly, the government believes that an appropriate sentence for Maureen Murphy should include a term of incarceration and the maximum allowable fine.

Obviously the maximum fine could never be paid and would accomplish nothing except to make it impossible for the defendant to live and rehabilitate herself. The maximum terms of imprisonment provided by the statutes are much too long to even be considered seriously for this relatively young person who has never, so far as we know, committed another crime.

Putting her in prison for any substantial length of time will undoubtedly help to destroy her. The conditions of imprisonment, even in the best prisons for women, are reprehensible.

Accordingly, the court assesses a fine of $5,000 payable as Probation directs over the next five years. It sentences the defendant on Counts 2, 10 and 27 to 5 years on each count, concurrent, suspending execution of sentence and placing her on probation. Home detention is a condition of the probation on Counts 2, 10 and 27.

She is sentenced to 2 years of home detention on Count One in place of imprisonment. It is unclear at this time whether a penalty of house arrest may be imposed without probation as a substitute for incarceration. The issue is an important and difficult one under the sentencing provisions of the October 1984 Comprehensive Crime Control Act, Pub.L. 98–473, 98 Stat. 1987, *codified at* 18 U.S.C. § 3621 *et seq.*

The defendant will be required to remain in her apartment, or other place of abode. She may not change her residence without the consent of Probation. She may leave only as permitted by Probation for medical reasons, employment and religious services and essential shopping for food and the like. She may go directly to and from her job and may seek a new job only as permitted by Probation. She is at all times subject to strict supervision, to surprise visits by Probation and strict control.

Probation has at the court's direction issued standards for home detention. *See* United States District Court, Eastern District of New York, Probation Department Protocol on Home Detention, attached as an Appendix to this memorandum. *See also, e.g.,* Corbett & Fersch, *Home As Prison: The Use Of House Arrest,* Federal Probation, March 1985 at 13; Swank, *Home Supervision: Probation Really Works,* Federal Probation, Dec. 1979 at 50.

Should the defendant not comply strictly with Probation's orders, she will be ordered to serve out her prison term. She is reminded that the prison term is now suspended, not cancelled.

There will be some who will believe that this sentence is much too lenient. Others will believe it too humiliating. Public humiliation is a part of the punishment. Obviously there is serious danger of depression and worse in the case of home detention. Probation will arrange for suitable psychiatric and other appropriate services for defendant to forestall such problems.

In many respects the colonial use of stocks and equivalent punishment in other societies served a useful goal in providing swift social disapproval as a deterrent. It is obvious that some form of this disapproval is required under modern conditions. How it can be accomplished is not clear. Obviously we will not tolerate branding and the carrying of signs. The matter is a difficult one and will require experimentation and modification of procedures in the light of experience.

APPENDIX

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

PROBATION DEPARTMENT
PROTOCOL ON HOME
DETENTION

HOUSE DETENTION OR HOME
DETENTION

The phrase house detention or home detention should be used in preference to the term house arrest, which has connotations that are not intended in the use of house/home detention as an alternative sentence procedure.

PURPOSE: House detention is intended to be used as an alternative to imprisonment. It involves a more restrictive sentence than a sentence of straight probation. It is admittedly less restrictive than actual imprisonment. House detention should not be used in place of a straight probation sentence. The emphasis on this sentencing procedure is its use as an *alternative to imprisonment.*

SELECTIVITY: House detention should be used very selectively. It should never be used for defendants involved in crimes of violence or crimes using firearms. It would not be suitable for defendants with a history of current heroin or cocaine usage. It would be inappropriate for drug sellers. In general, house detention should not be used with any defendant who could be considered a danger to the community, i.e. one offering a substantial risk of further criminal activity.

On the other hand, the sentencing alternative of house detention should not be restricted to white collar crime, although this type of offender is an obvious choice for house detention. In the Eastern District of New York about 55% of defendants appearing before the Court and the Magistrates receive sentences of probation. The remaining 45% receive jail sentences. It is from among this latter 45% of defendants that house detention might be used in selective cases. In actuality, with the Eastern District of New York's heavy concentration of large scale drug smugglers and armed bank robbers, we would estimate that 5% or less of the 45% of defendants destined for jail terms might be considered for house detention sentences. Based on the average of 900 to 1,000 presentence reports yearly, this would amount to somewhere between 35 and 45 feasible house detention sentences over a year's time; nevertheless this can add up to substantial savings nationwide.

APPENDIX—Continued

COST EFFECTIVENESS: House detention in lieu of a prison sentence is highly cost effective from the perspective of government expenditures for incarceration. The Bureau of Prisons estimated for fiscal year 1986 the average cost of imprisoning one person is $15,468.70 a year.[1] The Probation Division of the Administrative Office of the U.S. Courts estimates the current (fiscal 1986) annual cost of a probation officer position to be approximately $50,-000.[2] It is estimated that one probation officer could monitor a specialized caseload of 25 house detainees. For every 25 house detainees who truly represent 25 persons who would otherwise be imprisoned, the Bureau of Prisons would save $386,717 per year, less the probation officer's salary and expenses ($50,000) for a net saving of $336,717 per year on costs to the government. Even though this sentencing alternative of house detention would be used in highly selective cases, it is obvious that its use as a general option in federal criminal cases would result in savings of several million dollars yearly.

SOCIAL COST EFFECTIVENESS: Additional savings of a substantial nature would be realized by the community when the breadwinner is allowed to continue his employment, thereby preventing members of his family from becoming public welfare charges. Further, he would remain on the tax rolls. He would also be in a position to pay restitution or damages if appropriate. More difficult to measure but no less obvious, house detention would prevent the breakup of defendants' families and family networks, with consequent psychological and physical disruption that cause trauma, even to subsequent generations through his wife and children. The defendant's own traumatization in prison will also be avoided. This latter factor over and above the punishment of deprivation of liberty, although not intended by the law's sanction is, unfortunately, a concomitant effect in our prisons today. Imprisonment returns a man to society with a scared psyche, unpaid debts and financial losses, a highly disrupted if not irreparably broken family; children who lose respect for their parent; no job, and a gap in his life history that is hard to explain when he seeks a new job.

PROCEDURE: It is our feeling that persons being considered for a house detention type sentence should be sentenced to at least a two year jail term. No mention should be made by the Court of the house detention option. The defendant should be taken to the Metropolitan Correctional Center, and allowed to serve five to ten days incarceration on this sentence. The Court would, at the end of a short jail term, sua sponte or on the recommendation of the Probation Department reconsider the sentence, suspend the execution of the original (two year) sentence imposed, at the same time placing the person on probation for a period of five years with the Special Condition of Probation that the person be confined to his house for a period of from six months to two years.

Another option would be that on the date of sentencing the Court postpone the sentence, remand the defendant to the Metropolitan Correctional Center and after a short period of imprisonment and the defendant's return to the Court for sentence, at that time sentence him to a period of probation with the house detention condition. It is our feeling that the short period of confinement is necessary to impart a shock effect on the individual and will forestall a great deal of later testing of limits on the probationer's part which would result in the Probation Department involving the Court's time again.

All the usual conditions of probation will apply in these cases plus the Special Condition of house detention. The actual monitoring of those restricted to house detention will be done by specially assigned probation officers who will use frequent unannounced daily phone checks and frequent

---

1. Discussion with Northeast Regional Bureau of Prisons Administrator, October 1985. This estimate does not include capital expenses.

2. Discussion with Chief of the Division of Probation, Administrative Office of the U.S. Courts, October 1985

APPENDIX—Continued

unscheduled home visits, 24 hours a day, seven days a week. It will be made clear to house restricted probationers that violation of the Special Condition (as well as other conditions) will result in a return to court as a violator. *Exceptions*—It will be explained and emphasized to the house detainee that he or she will be allowed out of his house only to go to work; obtain medical or dental care; attend religious services and if no one else in the family can do it, the detainee may go out to shop for food necessities.[3] All of these with the advance permission of the probation officer and with monitoring for conformity. This is not a jail sentence and there is no earning of good time off or furloughs. It is hoped that the Court will impose the original suspended sentence in cases of proven violation, otherwise this alternative procedure will be a waste of the considerable investment of time called for by the Probation Department.

The many advantages to this alternative to prison are obvious if judiciously used and carefully monitored.

Conditions of Probation

## UNITED STATES DISTRICT COURT
### FOR THE

_____

To _____    Docket No.

Address _____

In accordance with authority conferred by the United States Probation Law, you have been placed on probation this date,                              , for a period of            by the Hon.            United States District Judge, sitting in and for this District Court at      .

CONDITIONS OF PROBATION

It is the order of the Court that you shall comply with the following conditions of probation:

(1) You shall refrain from violation of any law (federal, state, and local). You shall get in touch immediately with your probation officer if arrested or questioned by a law-enforcement officer.

(2) You shall associate only with law-abiding persons and maintain reasonable hours.

(3) You shall work regularly at a lawful occupation and support your legal dependents, if any, to the best of your ability. When out of work you shall notify your probation officer at once. You shall consult him prior to job changes.

(4) You shall not leave the judicial district without permission of the probation officer.

(5) You shall notify your probation officer immediately of any change in your place of residence.

(6) You shall follow the probation officer's instructions.

(7) You shall report to the probation officer as directed.

The special conditions ordered by the Court are as follows:

(1) House Detention: As a special condition of probation the Court has ordered that you are to be confined to your residence for a period of _____ months, under the strict

---

**3.** Death bed visits, wakes and funerals would be considered on a case by case basis and only for immediate family members or parents. All such exception decisions are to be made by the Probation Department and should be referred to the Probation Department by the Court to promote a uniformity of approach, and eliminate as far as possible disparity and excessive use of the Court's time.

APPENDIX—Continued

supervision of the Probation Department. This home confinement is in place of a prison sentence. Failure to adhere to this restriction will be considered a violation of probation and will result in the imposition of the suspended jail sentence. Your obligations are explained more fully in the attached sheet. All the usual conditions of probation remain in full force and effect in addition to this special condition.

I understand that the Court may change the conditions of probation, reduce or extend the period of probation, and at any time during the probation period or within the maximum probation period of 5 years permitted by law, may issue a warrant and revoke probation for a violation occurring during the probation period.

I have read or had read to me the above conditions of probation. I fully understand them and I will abide by them.

(Signed) _____ _____
　　　　　　　　　　Probationer　　　　　　　　Date

You will report as follows:

_____ _____
　　　U.S. Probation Officer　　　　　　Date

Conditions of Probation

## UNITED STATES DISTRICT COURT
For The

_____

To _____ Docket No. _____

Address _____

House Detention

A Special Condition of Probation

A finding of guilty having been entered against you, the United States District Court Judge has the power to impose a prison sentence. Instead of a period of confinement in a federal prison, the Court has directed that the prison sentence shall be suspended and in its place you shall be restricted to your residence under the same restraints that would be in effect if you were sent away to a federal prison, with the following modifications:

(1) You may leave your residence to go to work, but must return home promptly after work.
(2) You may leave your residence for necessary medical or dental services.
(3) You may leave your residence for weekly religious services.
(4) You may leave your residence for necessary food shopping if no other family member is available to do this.
(5) You may leave your residence in a life threatening emergency, for example, a fire in the building.
(6) You are permitted to have visitors.

At all other times you are restricted to the confines of your home or apartment. Your presence there will be checked frequently by unannounced home visits and telephone calls by your Probation Officer. There are no exceptions to your house detention (except as listed above). In prison there are no exceptions to confinement under much more restrictive conditions. All movements outside the home or apartment must be cleared in advance with your Probation Officer. Failure to abide by these regulations will result in the imposition of the suspended jail sentence.

APPENDIX—Continued

I have read and had read to me the above special conditions of house detention. I fully understand them and will abide by them.

(Signed) _____    _____
          Probationer               Date

(Witnessed) _____    _____
     U.S. Probation Officer        Date