THE STATE OF NEW JERSEY, PLAINTIFF, v. EDWARD J. McFEELEY, BERNARD J. McFEELEY, HARRY A. JENKINS, EDWARD J. MESCALL, ROBERT A. O'BRIEN, WILLIAM P. BLACK, M. JAMES McLAUGHLIN, DEFENDANTS.

Argued January 15, 1946—Decided October 1, 1946.

Before Justices DONGES, HEHER and COLIE.

For the motion, *Thomas H. Brown* and *Frank G. Schlosser*.

For the state, *Walter D. Van Riper,* Attorney-General, and *William P. Gannon,* Deputy Attorney-General.

For Carrie et al., grand jurors, *Walter D. Van Riper,* Attorney-General, and *Mark Townsend,* Deputy Attorney-General.

The opinion of the court was delivered by

COLIE, J.   The named defendants were each indicted by a grand jury of Hudson County and the indictments were removed into the Supreme Court.   In aid of their attack upon the indictments, the defendants were given leave to take depositions before Edmund S. Johnson, a Supreme Court Commissioner.   Among other witnesses called to testify were four members of the grand jury that handed up the indict-

ments which are under attack. These jurors refused to answer the questions propounded to them on the ground that to do so would violate their duty and the oath which each took that "the counsel of the state, your fellows and your own, you shall keep secret."

The general line of questioning is indicated by reproducing some of the questions directed to Grand Juror Carrie and Grand Juror Schermerhorn.

"Q. Were you on any committee of the grand jury of December, 1944?

"Q. Did you ever meet with any persons outside of the grand jury room as a committee of the grand jury?

"Q. How many members served on the grand jury committees?

"Q. Who served on those committees?

"Q. Did you in the committees discuss the matters pending before the grand jury?

"Q. Now, before the indictments in question were brought into court, Mr. Schermerhorn, were they read to the members of the grand jury?"

Dealing first with the question of whether or not the indictments were read to the members of the grand jury, we have no doubt that the question is improper and need not be answered.

We know of no requirement that an indictment be read to the members of a grand jury nor does counsel refer us to any. In *State* v. *Magrath*, 44 *N. J. L.* 227, and *State* v. *Shutts*, 69 *Id.* 206, it was held that an indictment need not be signed by the foreman of the grand jury. In the *Magrath* case, Chief Justice Beasley said: "The bills presented are in court openly declared by the grand jury to be the bills which they have found, and such bills are at the same time handed to the officer of the court, to be by him filed. Such a proceeding, the court and the grand jury being thus in contact, would seem to exclude all reasonable apprehension of the intervention of error or imposition." We deem the usual procedure as pointed out in the above quotation to be an adequate authentication that the indictment handed up to the court is the indictment which the grand jury found.

We next consider the propriety of the line of questioning which sought information of the existence of a committee composed of some of the members of the grand jury. It is said in the brief filed on behalf of the prosecutors of the writs that there existed a "business committee" which it is charged improperly and illegally dictated the actions of the grand jury.

Bearing in mind the admonition of the Supreme Court in *State* v. *Donovan,* 129 *N. J. L.* 478, that "it should be remembered that we are not engaged in a probe into the practice and procedure of the Hudson County criminal authorities in and about the discovery and punishment of crime. Definite issues are being tried out under the pending writ of *certiorari.*" So in this case counsel, in the examination of witnesses, should bear in mind that they are limited in the scope of the questions which they may properly ask of a witness to questions which will adduce evidence relevant to the bringing in of the indictments against the defendants named in the caption of this case. What follows hereafter must be read with reference to the activities of this particular grand jury in its consideration of the indictments which it returned against these particular defendants.

A grand jury is an entity composed of twenty-three individuals, and it can find a true bill only if a majority of twelve so vote. If such a committee existed and that committee undertook to interview witnesses outside of a regular session of the grand jury, then, of course, the members of that committee are not protected, and may not refuse to answer on the ground that the proceedings of the grand jury are, under their oaths, to be held secret. Subcommittees of a grand jury are unknown to the law. We think it proper that the members of this grand jury be interrogated as to the activities of the alleged business committee concerning the indictments of these defendants in so far as it was active at times and places other than when the grand jury itself was in session. We are also of the view that the line of questioning that was pursued in reference to the committee is proper because it may establish that the indictments under attack were based in part upon evidence adduced before the committee but not

adduced before the grand jury. In so far as the questions addressed to Bernard A. Gannon, clerk of the grand jury, and to Thomas J. Kenny, assistant clerk of the grand jury, are concerned, we think that they, too, should answer the questions relative to the activity of this "business committee" in so far as they have knowledge of its activities at times and places other than when the grand jury itself was in session.

An order may be presented in accordance herewith.