222 N.J. Super. 343 (1988)
536 A.2d 1299
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CIBA-GEIGY CORPORATION, TOMS RIVER CHEMICAL CORPORATION, WILLIAM P. BOBSEIN, DAVID R. ELLIS, JAMES A. MCPHERSON, ROBERT F. FESEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1987.
Decided January 20, 1988.
*345 Before Judges FURMAN, BRODY and SCALERA.
Carol M. Henderson, Deputy Attorney General, argued the cause for appellant (W. Cary Edwards, Attorney General, attorney, John DeCicco, Assistant Attorney General and Carol M. Henderson, of counsel, Carol M. Henderson on the brief).
Frederick A.O. Schwarz, Jr., of the New York Bar, argued the cause for respondent, Ciba-Geigy Corporation (Lowenstein, Sandler, Kohl, Fisher and Boylan, attorneys, Matthew P. Boylan, of counsel; Cravath, Swaine and Moore of the New York Bar, attorneys, Frederick A.O. Schwarz, Jr., of counsel).
Henry F. Furst argued the cause for respondent William P. Bobsein (Brown & Brown; Furst and Waldman, attorneys, Henry F. Furst, of counsel).
Paulette L. Pitt argued the cause for respondent, David R. Ellis (Hayden & Perle, attorneys. Joseph A. Hayden, Jr., of counsel).
Michael E. Wilbert argued the cause for respondent, James A. McPherson (Wilbert & Montenegro, attorneys, Michael E. Wilbert, of counsel).
Robert F. Novins argued the cause for respondent, Robert F. Fesen (Novins, York DeVincens & Pentony, attorneys, Robert *346 F. Novins, of counsel, James P. Brady, on the supplemental brief).
A joint brief was filed on behalf of all respondents (Matthew P. Boylan and Frederick A.O. Schwarz, Jr., on the brief).
No appearance was filed on behalf of respondent, Toms River Chemical Corporation.
The opinion of the court was delivered by SCALERA, J.A.D.
This appeal by the State arises from a dismissal of the entire thirty-five count indictment against defendants in connection with unlawful disposal of hazardous waste. We reverse and remand.
On October 24, 1984, a State Grand Jury returned a multiple count indictment charging defendants, Ciba-Geigy Corporation (Ciba), Toms River Chemical Corporation (Toms River), William Bobsein (Bobsein), David Ellis (Ellis), James A. McPherson (McPherson) and Robert Fesen (Fesen) with unlawful conduct concerning the abandonment and disposal of certain hazardous waste and related offenses. While the defendants are charged with various offenses not every defendant is named in each count.
Prior to trial, defendants moved to dismiss the indictment on the grounds that less than the necessary twelve grand jurors had been adequately informed of the evidence forming the basis of the indictment. The trial judge granted the motion and dismissed all counts of the indictment based on a finding that there were not twelve grand jurors qualified to vote on the indictment.[1]
*347 State Grand Jury No. 147, consisting of 23 members was duly impanelled. The presentation of evidence underlying this indictment commenced on March 21, 1985 and continued through October 24, 1985 during which 20 days of testimony was presented. For a reason unexplained by the record on appeal, evidence was also taken by "another grand jury" during that period, on August 1, 1985 and again on October 11, 1985. A transcript of the August testimony before the substituted grand jury was introduced to the instant grand jury as an exhibit on September 19, and the transcript from the October session was distributed to the entire panel on October 24, 1985, the same date on which an indictment was returned. Originally there were 23 grand jurors, but only 17 ultimately voted because six were "absent" during the final three months of testimony.
Beginning on October 3, 1985 the Assistant Attorney General (AG) indicated several times to the grand jurors that they would be expected to vote on October 24th. On October 17th, he specifically advised them about becoming "qualified," in the following words:
Secondly, let me just talk a little bit about next week. Those of you who may have missed any particular days of testimony will have to be qualified next week to vote, and the qualification procedure is that you will be given the transcript of that day to review, and when you are done with that procedure we can then speak in terms of the proposed indictment.
* * * * * * * *
At that point in time we will have for you transcripts of those days that any one of you individually may have missed, so that you might review them and become familiar with them, and so that you will then be qualified to deliberate and vote ...
On October 24, 1985, the day on which the indictment was returned, after the last witness had been presented, the AG informed the grand jurors that:

*348 The first thing we must do is present to those of you who were absent on any given days a transcript of those days so that you may be qualified to vote in this case ... What I'd like to do is if I could present to each Grand Juror, by Exhibit number, the testimony of those days which they missed.
After distributing some exhibits he stated:
Again, to explain what you're doing, this is of course required in order to enable you to feel confident that you know the case with that degree of knowledge that you could feel confident in voting one way or the other.
With that, we will leave the room and if you have any questions, of course you may call us. When you are completed with your qualification procedures, if the Foreperson could advise us we will then return.
A lunch recess was taken by the grand jurors in their chambers. Thereafter, the record indicates that the foreman had somehow informally advised the AG's assistant that the jurors had completed their reading. The AG appeared and announced to the entire grand jury that he had been so advised by the foreman and then proceeded to have the jurors read the entire proposed 71 page indictment and furnished them with a single copy. After "deliberating," the grand jury returned the thirty-five count indictment in question.
Sometime later, pursuant to motion, defendants secured permission to inspect the voting and attendance records of the grand jury and then moved for a dismissal of the indictment. After reviewing the grand jury voting and attendance records, minutes, notes, record sheets and the like the trial judge made detailed findings on whether a sufficient number of grand jurors were qualified to vote. Factually, she determined that of the original 23 jurors, six did not vote, three did not miss any sessions, four had missed one session and five had missed two sessions. Thus, of the first 12 grand jurors who voted she found that "the most any grand juror missed was two days of testimony, exhibits and witnesses." As to the remaining voting jurors, one missed three sessions, one missed four sessions, one missed five sessions and two missed six sessions. Further, she itemized the dates of the sessions that were missed by nine *349 jurors.[2]
At a second hearing the trial judge again heard arguments on defendants' motion at which time defendants raised additional grounds for declaring the indictment defective. They argued that there was no transcription of the assignment judge's charge to the grand jury, and that the jurors were never told by the AG that they had to read and study the transcripts, but were merely advised that they would have to "review" the transcripts of the days they missed. The essence of the dispute, however, continued to center on how much time was actually available to the jurors on the final day to review the transcripts supplied to them. The defendants insisted that common sense and logic dictated that the transcripts simply could not have been adequately read and understood by the jurors in the time left before voting. While the trial judge rejected all of defendant's ancillary arguments, regarding the primary issue of the adequacy of the jurors' review of the transcripts she reasoned that State v. Del Fino, 100 N.J. 154 (1985) requires that jurors not only be given an opportunity to read the transcripts but that they actually be allowed sufficient time to do so. The trial judge stated that,
... there must be sufficient time period and time when that grand juror, at least from an objective standard, that is, ... a sufficient period when that grand juror could have, ... read it to the extent he wishes to read it, and then to proceed with the vote that was before him.
She also indicated that the way in which the AG had advised the jurors was misleading since he did not indicate that they could take all the time necessary to actually read all of the transcripts and review all of the exhibits.
Specifically, she found that 12 grand jurors had not been qualified to vote due to their obvious inability to adequately read all of the transcripts and exhibit evidence for sessions each *350 had missed or for sessions taken before the substituted grand jury and enumerated that shortcoming as to each particular juror. She went on to note that even a discussion among the jurors designed to exchange such information with each other would have been impossible in the circumstances of this case. In short, the trial judge found that it simply was not logically possible for the jurors to have qualified themselves to vote. Regarding the inclusive time frame, she remarked,
The session began at either 9:30 or ten o'clock, Investigator Smith is the first witness to testify. He [the AG] remembers coming in at ten o'clock, testimony was taken, at that point transcripts of missing, of various sessions where Grand Jurors had missed were alloted to each of the Grand Jurors. That took some time to hand them out, to insure the testimony was properly given to the right Grand Jurors. And finally, a recess was taken. The court estimates that was between 10:30 and eleven o'clock when the Grand Jury began its reading of missing transcripts. At some point, a Deputy Attorney General offers lunch, and a break is taken. It is a short break, it merely is a break to the cafeteria to order lunch, pick it up and return to the reading room. But, at least it took some time, probably approximately a half an hour. It is clear from the testimony that by 1:30, there had been a report to [the AG] that, from the Foreman, which he paraphrases on the record, that the Grand Jurors were ready to vote. Thus, the total time that could have been available was approximately three and a half hours, as little as two hours.
She noted further that the comments made on October 3, 10, 17 and 24, by the AG that a vote would be taken on October 24, had the effect of leading the grand jury to expect that they had to vote on that day. Instead, they should have been told specifically that they could take the necessary time to review the materials. Accordingly, she dismissed the entire indictment.
Paraphrasing what we understand to be the State's position, it argues that the trial judge erred in dismissing the indictment because the State had fully complied with the guidelines established in State v. Del Fino, relating to the procedures to be followed in instances where grand jurors had missed sessions where evidence had been presented. Grand jury proceedings are clothed with a "presumption of validity" and since the AG had presented the transcripts and exhibits connected with the missed sessions with appropriate instructions and the grand *351 jury itself had indicated that it had read the material, no further inquiry by the court was warranted. A further inquiry would serve only to encourage defendants to assert an unfettered right to attack the integrity of grand jury proceedings and force an inquiry into the mental processes undertaken by the jurors in every case. In its words,
The operative issue is whether the grand jurors were able to adequately inform themselves by reading the transcripts given them in the time they ultimately indicated was satisfactory.
The New Jersey Constitution guarantees a criminal defendant the right to indictment by grand jury. N.J. Const. (1947) Art. I, para. 8. A Grand Jury must be composed of not more than 23 persons. N.J.S.A. 2A:73-1. Further, Rule 3:6-8(a) provides that an indictment may be found only upon the concurrence of twelve or more jurors. State v. Reynolds, 166 N.J. Super. 570, 572 (Law Div. 1979); State v. McFeeley, 134 N.J.L. 463, 465 (Sup.Ct. 1946). The Grand Jury has been regarded as a "primary security to the innocent against hasty, malicious and oppressive persecution." Wood v. Georgia, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962). Its function is to stand between citizens and the State and to determine whether "a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will." Ibid.; United States v. Provenzano, 688 F.2d 194, 202 (3rd Cir.1982), cert. den. 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982).
While the dismissal of an indictment is addressed to the sound discretion of the trial court, State v. New Jersey Trade Waste Ass'n., 96 N.J. 8, 18-19 (1984); State v. Bennett, 194 N.J. Super. 231, 233 (App.Div. 1984), certif. den. 103 N.J. 463 (1986), it is clear that it may only be dismissed on the clearest and plainest grounds. State v. Weleck, 10 N.J. 355, 364 (1952); State v. Clarke, 198 N.J. Super. 219, 228 (App.Div. 1985). Put differently, an indictment should not be dismissed unless its insufficiency is palpably shown. State v. Wein, 80 N.J. 491, 501 (1979). In this regard, a presumption of validity attaches to all grand jury proceedings unless and until proof is submitted *352 which rebuts this presumption. State v. Smith, 102 N.J. Super. 325, 339 (Law Div. 1968), aff'd 55 N.J. 476 (1970), cert. den. 400 U.S. 949, 91 S.Ct. 232, 27 L.Ed.2d 256 (1970). Proof of alleged irregularities in the internal operations of a grand jury must be based on something more than "information and belief." State v. Graziani, 60 N.J. Super. 1, 23 (App.Div. 1959), aff'd o.b. 31 N.J. 538 (1960), cert. den. 363 U.S. 830, 80 S.Ct. 1601, 4 L.Ed.2d 1524 (1960). Lastly, while an indictment may be challenged, Evid.R. 41 prohibits the admission of evidence designed to show the effect of various events upon the mental processes of the grand jurors. State v. Del Fino, supra, 100 N.J. at 164; State v. Athorn, 46 N.J. 247, 251 (1966), cert. den. 384 U.S. 962, 86 S.Ct. 1589, 16 L.Ed.2d 674 (1966).
The State, on this appeal, has chosen to frame the inquiry here in terms of whether the indictment returned against defendants violates the principles enunciated in State v. Del Fino, and State v. Reynolds. It argues that classifying jurors as qualified or unqualified on the basis of the number of transcript pages each was responsible for reviewing ignores the fact that these jurors had become "experts" on the subject enabling them to determine which evidence was cumulative or unnecessary. Thus, the State argues that no portion of the evidence or transcripts should be given any particular weight and that the trial judge here inappropriately undertook to delve into the thought processes of the jurors. We find that approach to be illogical and unpersuasive here.
In State v. Reynolds, the Law Division held that where only 11 of the necessary 12 grand jurors required to return an indictment were present to hear the entire presentation of evidence, the indictment must fail. 166 N.J. Super. at 575. The court there reasoned quite properly, that in such a case the function of the grand jury has been "irremedially compromised ... This function cannot be faithfully performed where the required minimum number of grand jurors voting the indictment *353 is composed of individuals absent during substantial portions of the presentation of the State's case." Ibid.
More recently, this issue was addressed in State v. Del Fino, in the context of a defendant's untimely motion to invalidate the indictment following his trial and conviction. In determining whether defendant had demonstrated sufficient "good cause" to allow the untimely motion, the Court explained that there is no good reason to prevent an absent juror from reading the transcript of the proceedings in order to become informed. 100 N.J. at 164. It cautioned that the impaneling judge
should charge the jurors that those who join in the indictment must have been present and have heard or otherwise have informed themselves of the evidence presented at each session. Ibid.

We note that the grand jury charge utilized in the instant case reflects compliance with that warning because the grand jury was instructed to "read and stud[y]" such transcripts.
We observe at the outset that State v. Del Fino is factually distinguishable from our situation because that case involved solely an administrative error by the grand jury clerk in failing to record the votes of the individual grand jurors. Consequently, when the jurors were polled nearly one year later regarding how they voted, only nine recalled voting to indict a codefendant on a particular count. Id. at 163. While ultimately defendant's challenge to the indictment was procedurally barred as untimely, the Court went on to discuss the procedure noted above to alleviate future problems involving missed testimonial sessions. It noted that federal courts have declined to adopt a "bright line" rule disqualifying any grand juror who had not attended every session and that state courts have not been uniform in their approach. The Court found the federal approach persuasive and repudiated the "bright line" rule suggested in State v. Reynolds. Rather, it adopted the concept of an "informed grand juror" and indicated that a "juror may read the transcript of the proceedings in order to become informed." *354 Id. at 164; United States v. Provenzano, supra, 688 F.2d at 201-203.
Thus, the basic premise in State v. Del Fino is that the necessary number of grand jurors must be "informed" of all the evidence before each may legitimately vote. To permit otherwise would be to disregard the mandates of Wood v. Georgia, supra, that a grand jury determine if a "charge is founded upon reason." 370 U.S. at 390, 82 S.Ct. at 1373. The State's argument that the jurors should be allowed to decide for themselves without judicial review, which transcripts may merely be skimmed or which deserve reading or a more detailed study is antithetical to this concept.
In State v. Del Fino, the Supreme Court was studious in reiterating that a grand jury inform itself of all the evidence presented to the end that it would properly fulfill its constitutional role. At no time did the Court suggest that mere submission of the transcripts to the jurors would suffice without according them sufficient time to read and thereby "inform themselves" of such evidence. Hence, as in this case, where the record patently demonstrates that the jurors have ignored their responsibility to adequately inform themselves, the presumption of validity has been rebutted. While the State representative here may have discharged his duty to supply the transcripts to the jurors, the inquiry cannot end there. It simply undermines the principles upon which a grand jury operates to suggest that any such member can then unilaterally ignore essential information pertaining to the matter before it by choosing not to read the transcripts or otherwise informing himself of such evidence. This is no more acceptable than allowing the jurors to arbitrarily leave the hearing room during the presentation of essential live testimony without gaining such information from another acceptable source and amounts to misconduct on the part of the grand jury.
It follows that no grand juror could conscientiously vote without such information. The trial judge properly and carefully *355 considered whether that had occurred here. Her findings in that respect are grounded in sufficient credible evidence and are therefore unassailable. State v. Johnson, 42 N.J. 146, 162 (1964). Our review also convinces us that it was not possible that the necessary voting jurors involved could have had time to adequately digest crucial testimony and inform themselves regarding such evidence.[3] Any suggestion that the court attempt to evaluate the individual jurors' ability to do so would result in improperly delving into the mental processes of each juror. Cf. Evid.R. 41. Such a method of impeachment has been discouraged in New Jersey. State v. Athorn, supra, 46 N.J. at 251. In sum, we agree with the trial judge's conclusion that not every voting juror had sufficient time in which to adequately review the transcripts and exhibits even to the extent necessary to determine which to scrutinize more closely and which to skim. Therefore, the presumption of validity of the affected portions of the indictment was sufficiently and properly rebutted.
However, the State urged below and again suggests here, that even assuming that such an infirmity was present as to portions of the indictment, dismissal of the entire prosecution was not warranted. We agree that such an argument has substance to the extent that the missed or overlooked evidence in question does not possess a clear capacity to produce an unjust and different result concerning particular counts. We hold that if defendants fail to show a nexus between the evidence that was overlooked or not properly presented and specific counts of the indictment, such counts should not be dismissed. See People v. Fujita, 43 Cal. App.3d 454, 478, 117 Cal. Rptr. 757, 771 (1974), cert. den. 421 U.S. 964, 95 S.Ct. 1952, *356 44 L.Ed.2d 451 (1975); People v. Colebut, 86 Misc.2d 729, 383 N.Y.S.2d 985, (Sup.Ct. 1976).
Clearly, whether dismissal of any part or all of an indictment is the appropriate remedy in such cases necessarily involves weighing the impact of such error as to each count in light of the basic requirements of the grand jury process. Cf. United States v. Al Mudarris, 695 F.2d 1182 (9th Cir.1983), cert. den. 461 U.S. 932, 103 S.Ct. 2097, 77 L.Ed.2d 305 (1983); United States v. Samango, 607 F.2d 877 (9th Cir.1979); United States v. Carcaise, 442 F. Supp. 1209 (M.D.Fla. 1978).
However, the inquiry conducted here was incomplete and we therefore remand the matter to the trial judge to afford the State the opportunity to press its claim that the "missing" evidence was not exculpatory, cumulative or so necessary to some of the counts so as to warrant dismissal of those counts. On such remand, obviously defendants should bear the burden of proof in this regard. State v. Manney, 24 N.J. 571 (1957). In other words, the defendants should be prepared to point out precisely how the evidence which was not adequately reviewed would serve to undermine the integrity of the grand jury's vote as to each of the counts. Although we have not been furnished with the voluminous evidence presented in support of the charges here we suspect that, apart from the transcripts and exhibits in question, such other evidence may well have adequately supported some of the counts of the indictment, aided by the presumption of validity of the grand jury's actions in this respect. Cf. Evid.R. 41.
In sum, even though the grand jury may have improperly overlooked evidence essential to a consideration of some of the counts, others might well have been based on competent evidence and not subject to such an attack.
Reversed and remanded for proceedings consistent with this opinion.
NOTES
[1] On November 13, 1987 defendants moved for a dismissal of the State's appeal asserting that it is moot because a new grand jury is presently investigating and reviewing the same allegations. Two of the defendants in the first indictment, Robert Fesen and David Ellis, have allegedly been granted immunity with respect to their testimony before that new grand jury. That motion was denied.
[2] The integrity of the record keeping of the attendance by the Clerk was called into doubt during these proceedings but the trial judge adequately resolved these issues by her findings.
[3] For example, one juror received transcripts consisting of over 2,000 pages, another received over 2,500 transcript pages, while another received transcripts comprising over 5,500 pages.