STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. ALLAN JIMINEZ, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 19, 1988—Decided December 12, 1988.

Before Judges PETRELLA, SHEBELL and GRUCCIO.

*John Kaye,* Monmouth County Prosecutor, attorney for appellant (*Mark P. Stalford,* Assistant Prosecutor, of counsel and on the letter brief).

*Alfred A. Slocum,* Public Defender, attorney for respondent (*Thomas F. Scully,* First Assistant Deputy Public Defender, on the letter brief).

The opinion of the court was delivered by

GRUCCIO, J.A.D.

The State appeals from a judgment dismissing Indictment No. 87–08–1404 charging Allan Jiminez with violating *N.J.S.A.* 2C:29–5(a), escape. At the time of defendant's flight from this jurisdiction, he was a participant in the New Jersey Intensive Supervision Program (ISP). The trial court found that ISP did not constitute official custody and therefore defendant could not be charged with the separate offense of escape. We reverse and remand this matter for trial.

Here are the facts: On June 25, 1985, defendant was convicted on two counts of third degree burglary, *N.J.S.A.* 2C:18–2, and two counts of third degree theft of moveable property, *N.J.S.A.* 2C:20–3(a). On November 8, 1985, defendant was sentenced to serve a maximum of ten years in Yardville Peni-

tentiary. Defendant made an application to the Intensive Supervision Program (ISP) and was accepted into the 90–day screening program in May 1986. On October 30, 1986, a 90–day review board recommended that defendant be placed in an alcohol treatment facility for 28 days as a condition of entry into ISP.

Defendant entered the Turning Point Program in Verona, New Jersey, on January 20, 1987, and subsequently left the facility against medical advice after eight days. Defendant fled the jurisdiction and later surrendered to authorities in Florida. Thereafter, defendant was extradited to New Jersey and expelled from the ISP. On August 19, 1987, defendant was indicted by a grand jury and charged with the separate offense of escape pursuant to *N.J.S.A.* 2C:29–5(a).

The record of the ISP court proceedings indicates that defendant was informed prior to his admission into ISP that he would be charged with a separate offense of escape if he left the State of New Jersey. We are told that all ISP participants are informed of this consequence.

On September 11, 1987, defendant entered a plea of not guilty along with a motion to dismiss the charge of escape, which was granted. The motion judge found that defendant could not be charged with escape as delineated in *N.J.S.A.* 2C:29–5(a) because defendant was not in "official detention" as contemplated by the statute. The State appeals and presents arguments regarding the intended construction of criminal statutes; policy concerns dealing with the underlying justification of ISP, and the viability of the ISP in general.

We agree with the State that ISP constitutes official detention as contemplated by *N.J.S.A.* 2C:29–5(a). We also find that the terms of defendant's ISP sentence established official detention. Defendant was confined in a pre-approved residence from 8 p.m. to 6 a.m. every night and could have been required, at any given time, to wear an electronic wristlet, to allow closer surveillance of his movements. His residence was also open to

unannounced, warrantless searches 24 hours a day. Defendant was not permitted to use drugs or alcohol, and was subject to random urinalysis tests to enforce that restriction. Moreover, he was required to obtain and maintain employment throughout his program sentence and was not permitted to obtain public assistance. These restrictions along with the intense, frequent and unscheduled observations by the ISP officers and community sponsors parallel the restrictions of incarceration.

In addition, at the ISP resentencing hearing, defendant was informed that he would receive credit for all time served in the program against his original ten-year prison term if he violated his ISP sentence.[1] Defendant was also informed that he would be charged with the separate crime of escape if he violated the physical confines of the ISP sentence.

Clearly, where sentencing combines both probation and custodial terms, defendant must be given credit only for time served in the custodial portion of that sentence. *State v. Carlough*, 183 *N.J.Super.* 234, 236 (App.Div.1982). This demonstrates that custody and credit for time served are unequivocally linked. Therefore, where a question arises as to whether a defendant was or was not in custody, the availability of credit against time served carries great weight toward the resolution of the issue. *State v. Reyes*, 207 *N.J.Super.* 126, 145 (App. Div.), certif. den. 103 *N.J.* 499 (1986).

This program so closely resembles incarceration that the time served must rightfully be taken into account in determining the remaining prison sentence to be served. *R.* 3:21–8. Likewise, ISP mandates credit for time served. These factors demonstrate that the program is in fact official detention.

ISP is a program developed by the Supreme Court and overseen by the Administrative Office of the Courts (AOC).

---

[1]Defendant received credit for all but two days in the program. Those days were not credited because he was en route to Florida in violation of his ISP sentence.

Our Supreme Court has mandated the granting of credit for time served in ISP. The trial judge failed to recognize the importance of this and erred when he found that the ISP was not official detention. The issue of official detention has been considered by the program designers and administrators to be a settled question.

ISP extradites all violators who flee the state of New Jersey. Recently, extraditions were arranged from Colorado, California and Canada. *Program participants who unlawfully leave the jurisdiction of the state are subject to being indicted for escape.* Indictments have been obtained through the cooperation of local prosecutor's offices. [*ISP Progress Report, August 1988* p. 5; emphasis supplied].[2]

In *State v. Abbati,* 99 *N.J.* 418 (1985), the Supreme Court clearly established its inherent power to administrate the criminal justice system. By specific reference, ISP is yet another instrument by which the court effectuates that control. *Id.* at 433. Therefore, the ability to fashion that program and establish its basic constructs lies exclusively with the court. Here, the viability of a separate charge of escape is clear.

Our focus now shifts to defendant's argument that ISP is, for all intents and purposes, parole or probation. Again, we agree with the State's interpretation that "enumerated exceptions in a statute indicate legislative intent that the statute be applied in all cases not specifically excepted." *State v. Reed,* 34 *N.J.* 554, 558 (1961). ISP is funded by the Legislature as a line item cost in the courts' budget indicating that the Legislature is aware of the program and its operation. Five years have passed since the initiation of this program. To date, the Legislature has not included ISP in the list of exceptions to the escape provision of the Penal Code, *N.J.S.A.* 2C:29–5(a). Absent that, it is patently clear that ISP is fundamentally different from either probation or parole.

---

[2]The ISP progress report is a periodic manual published by the Administrative Office of the Courts detailing the goals, objectives and implementation procedures of ISP.

Our courts have firmly established that a defendant on probation or parole is not entitled to have that time credited against his jail time should defendant violate or otherwise fail to complete the probationary term. *Reyes*, 207 *N.J.Super.* at 142. ISP on the other hand will credit all time served regardless of the reason for defendant's rejection from the program.

Case law clearly establishes that flight from work release can support a separate charge of escape. *State v. Walker*, 131 *N.J.Super.* 547 (App.Div.1974). Upon admission into ISP defendant was removed from the work release program. In order to determine whether defendant was making an informed decision to enter ISP, the resentencing panel made clear the nature of ISP. Judge Marzulli characterized ISP as "tougher" than work release and that defendant had other options including parole.[3] This characterization of ISP as "tougher" than work release further supports the application of an escape charge. Moreover, offering parole as an alternative, identifies the separate nature of ISP.

As we have indicated, parole and probation do not credit time served. After a convict violates the terms of his probationary sentence those programs normally carry an inherent punishment for violators—no credit. These programs are statutory devices which are exempted from the escape statute while separate sanctions are imposed by legislative act to deal with those who abscond from the program. *State v. Babcock*, 157 *N.J.Super.* 107, 109–110 (App.Div.1978). ISP has no individual sanctions against absconders. It relies mainly on the escape statute as the ultimate deterrent to those who would use the program as a vehicle for flight from prison.

ISP is neither parole nor probation. The Supreme Court clearly states in the judicial order that created the ISP, that all admission decisions are not reviewable and that there is no

---

[3]Defendant was scheduled for parole review in November 1986 but voluntarily chose to enter ISP.

right to a hearing or other judicial review of the admission process. *ISP Blue Book*, p. 8–9.[4] Again, this illustrates ISP's fundamental divergence from parole or probation. ISP is not a distinct sentencing alternative; it is merely an implementation of the original sentence handed down at trial. Moreover, those sentenced to probation are ineligible for ISP since one of the primary qualifications for entry into the program is that the participant must serve at least 30 days of incarceration before making application.

The 1987 ISP progress report indicates that the ISP sentencing hearing is not to be used to examine the appropriateness of the original sentence. The scope of the resentencing hearing is confined to admission. *ISP Progress Report, August 1988*, p. 2. This, along with the non-reviewability of the admission process, demonstrates that ISP is not a right but an alternative to prison confinement offered by the court to an individual convict. *Hurwitz*, "House Arrest: A Critical Analysis of an Intermediate–Level Penal Sanction," 135 *Penn.L.Rev.* 771, 793–795 (1987). The distinction being that probation is a separate and distinct sentence and ISP is an alternative method of serving out the original sentence.

Programs like ISP of this State have increasingly been appearing in other states and the proliferation of these programs has brought a great deal of academic literature. The impetus behind these programs stems from four basic goals: (1) decrease prison overcrowding; (2) provide alternative intermediate punishment; (3) reduce recidivism (sometimes referred to as controlling deviant behavior in the community), and (4) implement a corrections program significantly less expensive than traditional incarceration. *Pearson*, "New Jersey's Intensive Supervision Program: A Progress Report," 31 *Crime and Delinq.* 393, 394 (1985).

---

[4] *ISP Blue Book* was published by the Administrative Office of the Courts in 1983 to act as a guide in the development and implementation of the program.

A recent University of Pennsylvania Law Review article on house arrest and other intermediate forms of punishment states: "Many of the reported conditions of intensive supervision strategies *are similar or even identical to those imposed as part of the house arrest sanction.* For example, multiple weekly contacts between offenders and probation officers, as well as mandatory employment, may be common to both control techniques." [*Hurwitz, supra,* at 773; emphasis supplied]. This passage is particularly relevant to the present case and we note the citation to the New Jersey ISP program.

Principle application of community controlled intermediate punishment has been established in the federal court system as well. In *United States v. Murphy,* 108 *F.R.D.* 437 (E.D.N.Y. 1985), the defendant was convicted of obstructing justice pursuant to the federal R.I.C.O. Statutes. As a specific sentence on one count and as a condition of probation on another, defendant was confined to house arrest for two years in lieu of imprisonment. *See also Mitchell v. State,* 463 *So.*2d 416, 417–418 (Fla.Dist.Ct.App.1985) (Florida uses a house arrest program as an intermediate form of punishment which is considered to be a separate and distinct criminal sanction).

House arrest programs and those programs similar to them carry the notion of community control not found in probation or parole programs. Here, defendant had a community sponsor charged with daily oversight of defendant's activities. All ISP participants are required to have community sponsors. This along with the other distinct differences discussed leaves no doubt that ISP is an independent and distinct form of criminal sanction.

In sum, the trial court erred. The New Jersey ISP is substantially different from both probation and parole programs since the sanctions imposed by ISP include community control devices. We are fully satisfied that participants in the

system are under official detention for the purposes of *N.J.S.A.* 2C:29–5(a).

Reversed and remanded for trial.