608 A.2d 1013

STATE OF NEW JERSEY, PLAINTIFF,
v. TIMOTHY KYC, DEFENDANT.

Superior Court of New Jersey
Law Division Somerset County

Decided May 27, 1992.

*Nicholas L. Bissell, Jr.,* Prosecutor of Somerset County, *James L. McConnell,* Assistant Prosecutor, appearing for the State.

*William J. Bizub,* Deputy Public Defender of Somerset County, *Anthony J. Mignella,* Assistant Deputy Public Defender, appearing for the defendant.

IMBRIANI, P.J.Cr.

Can a prison inmate who is released from prison to return to his home under a Home Confinement Program (hereafter HCP) be convicted of escape if he leaves the program without authorization? We hold he cannot.

HCP is a novel and experimental program adopted by the Department of Corrections in September, 1989 and administered by the Bureau of Parole. Its purpose is to alleviate jail overcrowding and serve as a program of conditional release from custody to enable a prison inmate to bridge the cultural and psychological gap between prison life and societal life. A prison inmate is allowed to return to his home within six months of his earliest parole eligibility date subject to a program of heavy sanctions which are gradually lessened in the hope it will result in his good community adjustment when he is no longer subject to control by the Bureau of Parole. HCP is designed to achieve intensive short term control of a participant[1] while working towards the longer term goal of his ultimate behavioral reform.

When an inmate is accepted into the program he agrees to comply with many stringent rules, including the following: (1) he must remain in his approved residence except when permitted by his parole officer to go to work or other authorized

---

[1] It is interesting that the Policy Manual issued by the Bureau of Corrections sometimes refers to the person as a "participant" and at other times as an "inmate".

place, and (2) he may not leave New Jersey under any circumstances.

HCP was not created by statute and, unlike the Intensive Supervision Program (hereafter ISP), has never been judicially sanctioned. The ISP program differs from the HCP program in two significant respects: (1) an inmate is eligible for ISP as soon as he enters the prison system and (2) an ISP participant is free to go anywhere in the community.

Under the HCP program a participant's movements are monitored electronically by a "beeper" he must wear around his leg which will trigger an alarm in a monitoring station whenever he leaves his home without authorization. The defendant was admitted into the HDP program and on the morning of August 1, 1991 he met his parole officer in her office to discuss a recent urine test that was positive for drugs. If not satisfactorily explained this constitutes an "automatic program violation for which the inmate must be returned to custody". *See* New Jersey Department of Corrections, Bureau of Parole, *Electronically Monitored Home Confinement Program, Policy Manual* (1992). The parole officer allowed him to go to his place of employment to return work tools but instructed him to immediately return to the parole office. After defendant left he was not seen again until August 8, 1991, when he was arrested in Michigan.

The defendant was indicted for escape for failure "to return to official detention." [2] An escape is defined by *N.J.S.A.* 2C:29–5a as occurring when a person:

without lawful authority removes himself from *official detention* or fails to return to *official detention* following temporary leave granted for a specific purpose or limited period. "Official detention" means arrest, detention in any facility for custody of persons under charge or conviction of a crime or offense

---

[2]For reasons not made clear the indictment does not indicate whether the defendant was charged with a violation of subsection a. (escape) or b. (absconding from parole). However, the language employed in the indictment is similar to that in subsection a. so we will treat the indictment as charging a violation of subsection a.

... or any other detention for law enforcement purposes; but "official detention" does not include supervision of probation or parole, or constraint incidental to release on bail. (Emphasis added.)

This motion to dismiss the indictment is based on the grounds that once defendant was permitted to leave prison and return to his home he was no longer in "official detention", a necessary element of this offense. He does not suggest that he should be allowed to elude punishment and make a mockery of the law. Rather, he argues, the integrity of the penal system can be preserved by returning him to prison and imposing institutional sanctions, such as loss of commutation credits, denial of parole, etc.

Motions to dismiss an indictment are addressed to the sound discretion of the court, *State v. Ciba–Geigy Corp.* 222 *N.J.Super.* 343, 536 *A.*2d 1299 (App.Div.1988), and should be granted only when it appears on the clearest and plainest grounds that the indictment is palpably defective. *State v. Ramseur*, 106 *N.J.* 123, 232, 524 *A.*2d 188 (1987). Patently, if the alleged conduct does not violate any law, the court must exercise its discretion and dismiss the indictment.

The escape statute, *N.J.S.A.* 2C:29–5, was part of the new Code of Criminal Justice adopted September 1, 1979. At that time neither the HCP or ISP programs existed. In 1982 the ISP program was judicially created to permit non-violent prison inmates to return home prior to their earliest parole date as an intermediate form of punishment. It was believed that ISP not only would be less costly than prison, but would achieve the criminal justice objectives of both deterrence and rehabilitation because it would be more onerous than traditional probation.

In 1989 the ISP program received a set-back when *State v. Clay*, 230 *N.J.Super.* 509, 553 *A.*2d 1356 (App.Div.1989) held that a participant could not be convicted of escape for violating the conditions of ISP by leaving the state without permission. The court reasoned that participation in the ISP program did not constitute "official detention" since the defendant was

"free in the community" *Id.* at 523, 553 *A.*2d 1356.[3] The Court said that the escape statute dealt with "traditional physical detention" and not with a hybrid status that permitted release into the community. The State's argument that ISP was within the scope of "official detention" because, although not a traditional detention, it constituted "any other detention for law enforcement purposes" was rejected for the reason that the statute provides "no textual support" for this proposition. *Id.* at 522, 553 *A.*2d 1356.

In response to *Clay*, on February 25, 1991, the Legislature amended *N.J.S.A.* 2C:29-5 by designating the then existing escape statute as subsection a. and expanding the definition of escape in subsection b. to include "Absconding From Parole". *L.* 1991, *c.* 34, sec. 1. Parole was defined to include "participation in the Intensive Supervision Program (ISP)", *Id.*, but made no mention of HCP.

▆ Consequently, we believe that the arguments advanced in *Clay* to dismiss an escape charge for leaving the ISP program without authorization are even more persuasive here.

First, the statute provides no textual support for the State's argument. At the very best, the State's argument from the statute's text confronts ambiguity. Second, defendant was not detained in any sense in any particular facility or institution. He was free in the community, albeit under strict probation-type supervision. Third, ISP is obviously a hybrid—by its own description it is a novel and experimental program which shares traditional qualities of both probation and parole. [Since] ... ISP did not exist conceptually in 1979 when the Criminal Code, including the "escape" statute, was adopted ... [w]e can fairly conclude that the Legislature harbored no specific intent on whether failure in ISP was an "escape from official detention" when *N.J.S.A.* 2C:29-5 was adopted in 1979.

\*    \*    \*    \*    \*    \*    \*    \*

In light of the traditional doctrine that courts must strictly construe criminal statutes, we cannot strain to criminalize by judicial ukase or condone adminis-

---

[3]The Court declined to follow *State v. Jiminez,* 229 *N.J.Super.* 256, 551 *A.*2d 191 (App.Div.1988) which held to the contrary and was later reversed, 118 *N.J.* 252, 571 *A.*2d 295 (1990), "substantially for the reasons expressed in the opinion of the Appellate Division in *State v. Joseph Clay".*

trative criminalization of defendant's count in failing to comply with ISP. [230 *N.J.Super.* at 523, 553 *A.2d* 1356.]

Although the indictment does not charge "absconding from parole" in violation of *N.J.S.A.* 2C:29–5b it also would not support this indictment. In addition to the normal definition of parole, subsection b. states:

[a]s used in this subsection, "parole" includes participation in the Intensive Supervision Program (ISP) ...

It is silent as to the HCP program. Consequently, we can fairly assume that when the Legislature broadened the escape statute in 1991 to include absconding from parole it decided not to include HCP participants within the definition of persons on parole even though the HCP program was then in existence. And, if the Legislature never consider the HCP program, *a fortiori* it would logically follow that it was not the intent of the Legislature to treat HCP participants as parolees within the intent of the statute.

We would observe that work release from a county jail stands on a different footing. An inmate of a county jail who leaves a work release program can be convicted of escape because, although not within the confinement of a prison at the moment he left, "he was at all times within the custody of the officials at the institution" since he had to return to the county jail each evening. *State v. Walker*, 131 *N.J.Super.* 547, 548, 330 *A.2d* 634 (App.Div.1974). Moreover, *N.J.S.A.* 30:8–53 provides that:

[a]ny person admitted to outside labor or a vocational training program under this act who shall escape or attempt to escape while in such status outside that county institution shall be deemed to have escaped and treated in accordance with the law.

Accordingly, we are satisfied that a participant in the HCP program cannot be convicted of escape and the motion to dismiss the indictment shall be granted.