617 A.2d 1245

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. TIMOTHY KYC, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 30, 1992—Decided December 18, 1992.

Before Judges SHEBELL, ARNOLD M. STEIN and CONLEY.

*James L. McConnell,* Assistant Prosecutor, argued the cause for appellant (*Nicholas L. Bissell,* Jr., Somerset County Prosecutor, attorney; *James L. McConnell,* of counsel and on the letter brief).

*Mark H. Friedman,* Assistant Deputy Public Defender, argued the cause for respondent (*Zulima V. Farber,* Public Defender, attorney; *Mark H. Friedman,* of counsel and on the letter brief).

*Michael J. Williams,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Robert J. Del Tufo,* Attorney General, attorney; *Michael J. Williams,* of counsel and on the letter brief).

The opinion of the court was delivered by

SHEBELL, J.A.D.

The State appeals from the Law Division's dismissal of a Somerset County indictment which charged defendant with one count of third-degree escape (*N.J.S.A.* 2C:29–5a).[1] In his decision, the Law Division judge noted that the Home Confinement Program (HCP), which defendant was participating in, did not exist at the time the escape statute, *N.J.S.A.* 2C:29–5, was adopted in 1979 as part of the Code of Criminal Justice. *State v. Kyc,* 257 *N.J.Super.* 600, 603, 608 *A.*2d 1013 (Law Div.1992). The judge, therefore, concluded that the defendant was in a position similar to a participant in the Intensive Supervision Program (ISP) and was "free in the community" and not subject to "official detention." *Id.* at 603–04, 608 *A.*2d 1013.

---

[1] The indictment refers only to *N.J.S.A.* 2C:29–5 without a subsection designation. However, it is clear from the language of the indictment and a review of the grand jury transcript that the charge was intended to be under subsection a entitled, Escape, rather than subsection b, Absconding from parole, which became effective February 25, 1991.

He concluded that, under the authority of *State v. Clay*, 230 *N.J.Super.* 509, 553 *A.*2d 1356 (App.Div.1989), *aff'd o.b.*, 118 *N.J.* 251, 571 *A.*2d 295 (1990), the charge could not stand against the defendant as an absconding participant in the HCP under either subsection a or b. *Kyc, supra,* 257 *N.J.Super.* at 604–05, 608 *A.*2d 1013. We reverse and remand.

Defendant had been sentenced to State Prison on June 8, 1990, to serve a term of five years, with a twenty-month term of parole ineligibility as mandated by *N.J.S.A.* 2C:35–7, there being no agreement from the prosecutor to permit a lesser mandatory term of parole ineligibility. Thereafter, defendant's original sentence was amended to four years of confinement with sixteen months of parole ineligibility.[2] On May 1, 1991, less than eleven months after the initial sentencing and while still ineligible for parole, defendant was permitted to leave the institution to stay with his family after being advised of his responsibilities and duties under HCP. According to the policy manual of the New Jersey Department of Corrections, all participants in the program are required to sign an agreement acknowledging that "unauthorized absence from my approved residence may be deemed to be an escape under the criminal code."

Defendant was given an electronic wristlet to wear, the purpose of which was to monitor whether he was at his home during the times when he was required to be there as he was not allowed to leave without permission. He was given curfews sufficient to permit him to go to work and then return home immediately. Participants in the program are further advised and must sign an agreement that any attempt to remove a monitoring device "may be considered an attempt to escape."

---

[2] This amendment is significant as an inmate may not be referred to the HCP unless he or she is within six months of either an established parole date, an actual parole eligibility date, an expiration of maximum sentence, or an anticipated parole date established by the State Parole Board.

While defendant was still ineligible for parole and within the strictures of the "Pre–Parole Home Confinement Program," he was found to have "a positive urine for drugs." The person supervising his program participation was a parole officer employed by the Department of Corrections. On August 1, 1991, the officer advised defendant of the test results and that his case would have to be reviewed by one of the program supervisors. Defendant had been on his way to work that morning, and he asked if he could return his boss's tools to him at a location not far from the officer's office. Defendant was to "come right back" to the office; however, he did not return. The monitoring device revealed that he left the office and went straight home for about half an hour and then fled, missing his 6:30 p.m. curfew. He was declared an escapee, and a warrant was issued for his arrest. He was arrested some time later in Michigan and returned to the State of New Jersey.

*N.J.S.A.* 2C:29–5a, Escape, provides:

A person commits an offense if he without lawful authority removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period. "Official detention" means arrest, detention in any facility for custody of persons under charge or conviction of a crime or offense, or committed pursuant to chapter 4 of this Title, or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but "official detention" does not include supervision of probation or parole, or constraint incidental to release on bail.

In *State v. Clay, supra,* we concluded that a participant in ISP who fails to abide by the rules and leaves New Jersey is not guilty of the crime of escape under the above statute. ISP was adopted by amendment to *R.* 3:21–10(e). Under that rule, ISP participants required a change of their custodial sentence for entry into the program. This change was "addressed entirely to the sound discretion of the three-judge panel assigned to hear them." The three-judge panel also was vested with "the authority to resentence offenders ... in the event they fail to perform satisfactorily following entry into the program." *R.* 3:21–10(e).

In *Clay* we noted that ISP operated under "a concert of traditionally separated powers," being funded by the Legislature, endorsed by the Executive branch, and operated by the Judiciary. *Clay, supra,* 230 *N.J.Super.* at 513, 553 *A.*2d 1356. We rejected the State's position that ISP is within the scope of the language "any other detention for law enforcement purposes" for several reasons and found "no textual support" for the position that ISP participants were under detention for law enforcement purposes. *Id.* at 523, 553 *A.*2d 1356. ISP participants were not under a custodial sentence or detained in any sense as they were in effect on probation and free in the community, albeit under strict supervision. We were unable to find any specific intent by the Legislature to classify "failure in ISP" as an "escape from official detention." *Ibid.* We noted that the record provided no documentation that defendant was warned that failing ISP would leave him exposed to indictment for escape or other criminal penalties. We observed that the integrity of ISP would be preserved by resentencing defendant to prison with a possible consequence of being required to serve out his maximum sentence. *Id.* at 524, 553 *A.*2d 1356.

Subsequent to our decision in *Clay* and its affirmance by the Supreme Court, the Legislature, perhaps not satisfied with the lesser consequences of absconding from ISP, amended *N.J.S.A.* 2C:29–5 by adding subsection b, entitled "Absconding from parole." The Legislature declared that if a person subject to parole "goes into hiding or leaves the State with a purpose of avoiding supervision," the parolee commits a crime of the third degree. *N.J.S.A.* 2C:29–5b. It further provided that "parole" includes participation in ISP. The Legislature made no specific reference to HCP, nor did it amend the language of subsection a pertaining to escape to in any way alter the classification of "official detention." It is clear that the Legislature in amending *N.J.S.A.* 2C:29–5 intended that there be two classifications of absconding persons subject to prosecution, i.e., under subsection a, those persons subject to official detention who without lawful authority remove themselves and, under subsection b,

those persons subject to parole who abscond or otherwise attempt to avoid supervision. *N.J.S.A.* 2C:29–5a, b.

We conclude that, depending on their status and classification, participants in HCP may fall into either category. Under HCP, pre-parole inmates are eligible for participation though not eligible for parole, whether or not serving a mandatory term, but "[u]pon achieving his/her parole date, the inmate shall be issued a Parole Certificate and given a parole class" after which the "now parolee" is discharged from the inmate program and is subject to established policies and procedures of parole. Further parolees, both juvenile and adult, may also be admitted to or retained in the program where it appears that use of the strictures of the program will reduce the likelihood that the parolee will commit a crime, or even in special circumstances where it is appropriate to impose HCP in lieu of revocation of parole.

We are fully satisfied that, under the HCP as administered by the Department of Corrections during defendant's participation, prior to parole an individual sentenced to a custodial term and participating in the program remains an inmate and until granted parole status, remains subject to the "official detention" of the Department of Corrections. *N.J.S.A.* 2C:29–5a. Pre-parole HCP participants are in fact inmates. They are referred to as such throughout the policy manual of the program. They must be electronically monitored and confined to an approved residence, unless constructively engaged in activity approved by their supervising officer. While a participant is unemployed or not in a vocational/educational program, unrestricted activities are not permitted to exceed more than three hours per day and then only to engage in "verifiable, constructive activities." The program is structured in such a manner as to be consistent with the intent of the Department of Corrections that pre-paroled participants remain inmates and that the inmate remains in "official detention" within the contemplation of *N.J.S.A.* 2C:29–5a.

We think it is clear that where a participant in the program has parole status, *N.J.S.A.* 2C:29–5b, relating to absconding from parole, would be applicable. It would be an anomalous and absurd result, clearly unintended by the Legislature, if parolees whether in HCP, ISP, or merely on parole were subject to a third-degree crime if they abscond, but that non-paroled inmates placed in HCP, who might not even be eligible for parole, could place themselves outside of the reach of the Department of Corrections or program officials by leaving their place of detention or the jurisdiction and yet face no criminal consequence. We are not compelled to arrive at such a result. *See State v. Gill,* 47 *N.J.* 441, 444, 221 *A.*2d 521 (1966); *State v. Pavao,* 239 *N.J.Super.* 206, 210, 570 *A.*2d 1285 (App.Div.), *certif. denied,* 122 *N.J.* 138, 584 *A.*2d 211, *cert. denied,* 498 *U.S.* 898, 111 *S.Ct.* 251, 112 *L.Ed.*2d 209 (1990); *State v. Jenkins,* 173 *N.J.Super.* 25, 29, 412 *A.*2d 1359 (Law Div.1980).

The order dismissing the indictment is therefore reversed; the indictment is reinstated, and the matter is remanded to the Law Division for further proceedings.