829 A.2d 1148

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jonathan N. WEGLEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Dec. 5, 2002.

Decided Aug. 6, 2003.

Jeffery M. Cook, Gettysburg, for Jonathan N. Wegley.

Peter Rosalsky, Philadelphia, for Defender Association of Philadelphia.

Paul T. Dean, Matthew Fogal, Warren Philip Balden, Jr., for Commonwealth of Pennsylvania.

Before CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

Justice SAYLOR.

We allowed appeal in this matter to examine the Superior Courts conclusion that an individual serving an intermediate punishment sentence of electronically monitored house arrest is in official detention for purposes of the criminal offense of escape. We affirm.

Appellant Jonathan Wegley (Wegley) entered guilty pleas in the Adams County common pleas court to two counts of forgery. He was sentenced to 24 months of intermediate punishment, including at least nine months of house arrest with electronic monitoring.[1] Intermediate punishment was subsequently revoked, and Wegley was ultimately re-sentenced to 48 months of intermediate punishment, including 14 months of partial confinement followed by six months of house arrest with electronic monitoring. The day after Wegley began the house arrest portion of his sentence, he removed the electronic monitoring device from his leg, triggering an

---

1. Intermediate punishment is a statutorily authorized sentencing alternative. *See* 42 Pa.C.S. § 9721(a)(6). Home confinement and electronic monitoring are conditions impossible in a sentence of intermediate punishment. *See* 42 Pa.C.S. § 9763(b)(16), (17); 37 Pa.Code § 451.51(a)(1–3).

alarm. Shortly thereafter, two probation officers and a police officer proceeded to Wegleys residence, but could not gain entry. The probation officers returned some time later and were unable to locate Wegley at his residence.

Wegley was charged with escape pursuant to Section 5121(a) of the Crimes Code, 18 Pa.C.S. 5121(a), based upon his unlawful flight from house arrest. That provision sets forth the following definition of the offense of escape:

A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

18 Pa.C.S. 5121(a). Also of importance to the present appeal is the following definition of official detention:

As used in this section the phrase "official detention" means arrest, detention in any facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail.

18 Pa.C.S. 5121(e).

Prior to trial, Wegley asserted that he could not be convicted of escape because his conduct did not fall within the statutory definition of that offense.[2] The trial court agreed and dismissed the escape charge. In its accompanying opinion, the court explained that escape requires the defendant to remove himself from official detention as that term is statutorily defined. The court noted that escape has historically been limited to situations closely resembling incarceration, and that the definition of the offense specifically excludes probationary and parole supervision. Observing that the precise issue is one of first impression, the trial court looked to precedent in the context of sentencing and credit for time served, which has excluded house arrest from the concepts of custody, imprison-

---

2. It appears that this assertion was made in a motion to dismiss, although the record does not state this explicitly.

ment, or partial confinement, and also examined precedent from other jurisdictions, ultimately concluding that Wegley was not in detention for purposes of the escape statute. Finally, the court noted that the Commonwealth was not without a remedy, as Wegleys intermediate punishment sentence could again be revoked and he could receive the maximum allowable sentence. The court also indicated that Wegleys conduct could adversely affect his ability to obtain an early release on parole.

The Superior Court reversed, opining initially that official detention is a broad term, and that detention may be exercised in the absence of restrictions such as bars, handcuffs, or locked doors. *Commonwealth v. Wegley*, 791 A.2d 1223, 1225 (Pa.Super.2002). Moreover, while acknowledging that the view expressed by the lead opinion in *Commonwealth v. Chiappini*, 566 Pa. 507, 782 A.2d 490 (2001)—namely, that home electronic monitoring constitutes custody for purposes of determining credit for time served—did not garner the support of a majority of this Court, the Superior Court distinguished custody for purposes of the Sentencing Code from official detention for purposes of the Crimes Code. Centrally, the court indicated that, because home confinement effects a restraint on liberty whereby a persons ability to come and go freely and to engage in activities outside the confines of a designated place are limited, flight from such confinement constitutes removal from official detention notwithstanding that the means of ensuring detention are electronic rather than physical. Finally, the Superior Court examined cases from other jurisdictions pertaining to escape from home monitoring, and found that the case involving statutory language most similar to Pennsylvanias escape statute presented persuasive justification for holding that the offense of escape can occur in the context of home confinement. *See Wegley*, 791 A.2d at 1226 (citing *State v. Kyc*, 261 N.J.Super. 104, 617 A.2d 1245 (1992)).

Relying upon the specific exclusion for parole and probation, Wegley presently argues that the intermediate punishment program under which he was supervised is an alternative to

incarceration and is administered by the Adams County Probation and Parole Office. He further contends that he has been adequately punished for violating the terms of his special probationary program,[3] but has not committed a new, separately punishable offense. Wegley asserts that intermediate punishment does not qualify as official detention for purposes of credit towards a defendants minimum sentence, and that the Superior Courts reliance upon *Kyc* was misplaced, as New Jerseys definition of escape includes absconding from parole.[4]

As noted, escape requires the existence of official detention, which is described, in relevant part, as any other detention for law enforcement purposes. As it is undisputed that Wegley was restricted to his home for law enforcement purposes, a threshold question is whether his home confinement amounted to detention. Although no definition of the word is provided in the escape statute or otherwise within the Crimes Code, we note that the codes provisions are to be interpreted according to the fair import of their terms. 18 Pa.C.S. § 105. In this regard, detention, broadly speaking, connotes any delaying or restraining of an individual from going forward. *See People v. Bower*, 24 Cal.3d 638, 156 Cal.Rptr. 856, 597 P.2d 115, 118 (1979); BLACK'S LAW DICTIONARY 450 (6th ed.1990); WEBSTER'S COLLEGIATE DICTIONARY 362 (2d rev'd & updated Random House ed.2000) (definition 1). While the term can also be construed somewhat more narrowly to imply remaining within

---

**3.** Wegley contends that he was removed from intermediate punishment and re-sentenced to a term of incarceration of 36 to 76 months, although there is nothing in the record to support this claim.

**4.** Regarding the Commonwealth's argument, by order dated October 28, 2002, this Court granted the Commonwealth an extension of time to file its brief, and stated:

Extension of Time is granted to the extent that Appellee's Brief is due on or before November 15, 2002. Appellee's brief is to be received in the Middle District Filing Office by close of business. No further extensions of time will be granted.

The Commonwealth failed to meet the November 15 deadline, and, on December 2, 2002, requested leave to file its brief *nunc pro tunc, see* Pa.R.A.P. 105(b), on the basis that it believed that the deadline was later than November 15. As the Commonwealth has not shown good cause for purposes of Rule 105(b), its request is denied, and its submission will not be considered.

the custody of law enforcement officials, *see id.* (definition 2, "maintenance of a person in custody or confinement, as while awaiting a court decision"); BLACK'S LAW DICTIONARY 459 (7th ed.1999) (defining detention as, *inter alia,* the "act or fact of holding a person in custody"), even under this more restricted meaning the concept of custody or confinement for purposes of the offense of escape has been broadly construed both in this Commonwealth,[5] and elsewhere.[6]

Although this Court has highlighted the non-institutional nature of home monitoring programs, *see Commonwealth v. Kriston,* 527 Pa. 90, 95–96, 588 A.2d 898, 900 (1991);[7] *Com-*

5. *See, e.g., In re Welsh,* 327 Pa.Super. 112, 118, 475 A.2d 123, 127 (1984) (finding that the defendant was subject to official detention when he was placed in an unsecured, unrestricted facility pursuant to the Juvenile Act); *Commonwealth v. Brown,* 261 Pa.Super. 240, 245, 396 A.2d 377, 379 (1978) (indicating that the defendant was still in detention although he had left jail to participate in a work-release program); *see also Commonwealth v. Colon,* 719 A.2d 1099, 1101 (Pa.Super.1998) (holding that the defendant was placed in official detention when two police officers approached him and told him that he was under arrest, as the defendant could not reasonably have believed that he was free to leave); *Commonwealth v. Stewart,* 436 Pa.Super. 626, 630, 648 A.2d 797, 798 (1994) (same as to an individual who drove away after a uniformed police officer with his gun drawn requested that he turn his car off and place his hands on the dashboard).

6. *See State v. Hill,* 117 N.M. 807, 877 P.2d 1110, 1111 (Ct.App.1994) (suggesting that, although prisoner was released on his own recognizance while awaiting sentencing, he remained within the state's constructive custody, and hence, could be charged with escape when he failed to return to state officials); *State v. Long,* 82 Ohio App.3d 168, 611 N.E.2d 504, 506 (1992) (stating that electronically monitored house arrest constitutes detention inasmuch as the arrestee knows he is required to remain at home); *State v. Sasser,* 104 Or.App. 251, 799 P.2d 1146, 1147 (1990) (defendant who was released to her sister's house due to jail overcrowding could be charged with escaping a correctional facility when she failed to abide by the conditions of her release, because she remained within the constructive custody of prison officials) (superseded by statute); *State v. Polito,* 132 N.H. 410, 566 A.2d 183, 184 (1989) (defendant was in custody for purposes of escape when police officer informed him that he was under arrest pursuant to outstanding warrants).

7. The Court in *Kriston* explained that

> [h]ome monitoring programs bear some similarities to both probation and partial confinement programs. The degree of confinement experienced by one who undergoes home monitoring is certainly greater

*monwealth v. Conahan*, 527 Pa. 199, 202–03, 589 A.2d 1107, 1109 (1991), those cases dealt with the question of whether various different settings were sufficiently prison-like to entitle an individual who spent time in them to credit under the Sentencing Code against a mandatory sentence of incarceration. In answering negatively as to detainment at home, this Court reasoned that the comforts and amenities of the home are too far removed from the experience of institutional confinement to satisfy the Legislatures determination that certain offenses should carry serious punitive consequences. *See Kriston*, 527 Pa. at 93–94, 588 A.2d at 899 (The qualitative differences in treatment experienced by one who is confined in an institution, as opposed to one who merely stays at home, are too numerous and obvious to require elaboration.); *Conahan*, 527 Pa. at 203, 589 A.2d at 1109;[8] *cf. Commonwealth v. Koskey*, 571 Pa. 241, 248, 812 A.2d 509, 514 (2002) (stating that, where the Legislature has prescribed a minimum sentence of imprisonment for a particular offense, the trial court lacks discretion to order any portion of the minimum sentence to be served in alternative housing). Thus, their holdings do not address the separate question, presented here, of whether, in spite of the amenities and nonrehabilitative temptations present in the home, *Conahan*, 527 Pa. at 203, 589 A.2d at 1109, an offender sentenced to a term of intermediate punish-

than is normally experienced under probation, but clearly less than is experienced through confinement in an institution.

*Kriston*, 527 Pa. at 95–96, 588 A.2d at 900; *accord Bailey v. State*, 355 Md. 287, 734 A.2d 684, 688 (1999) (It has been said of house arrest that [i]n view of its diverse purposes, house arrest is most accurately described as a sanction occupying a level of punishment between reformative ordinary probation and retributive incarceration. (quoting Jeffrey N. Hurwitz, *House Arrest: A Critical Analysis of an Intermediate–Level Penal Sanction*, 135 U. Pa. L.Rev. 771, 779 (1987))).

8. One court has observed that

[w]hile at home, an offender enjoys unrestricted freedom of activity, movement, and association. He can eat, sleep, make phone calls, watch television, and entertain guests at his leisure. Furthermore, an offender confined to his home does not suffer the same surveillance and lack of privacy that he would if he were actually incarcerated. *Schlossman v. State*, 105 Md.App. 277, 659 A.2d 371, 383 (1995), *overruled on other grounds, Bailey*, 734 A.2d at 690 n. 10.

ment, who is restricted to his home and monitored electronically by law enforcement authorities, is subject to detention.

■ We believe that he is. When an individual is confined to his home, and his presence there is monitored by the authorities, he is certainly detained in the sense that he is restrained from exercising his liberty to come and go as he pleases. Moreover, as he is serving a sentence of punishment following conviction, he remains within the states legal custody and under its control, regardless of his physical presence at his home. Therefore, since Wegley was detained within the confines of his home as part of his sentence of punishment for forgery, and remained within the states custody, he was subject to detention.

Having determined that Wegley was subject to detention within the meaning of the escape statute, we must now address his claim that Section 5121(e)'s enumerated exceptions apply to him. As previously noted, Wegley argues that the escape statute explicitly excludes supervision incident to probation from its reach, and that this exclusion should be understood to subsume supervision incident to a term of intermediate punishment, as such punishment is, in reality, a form of probation.

Pennsylvania first enacted provisions establishing intermediate punishment as a sentencing alternative in 1990. These provisions were contained in a package of legislation that included the Pennsylvania County Intermediate Punishment Act,[9] directing counties to establish intermediate punishment programs subject to approval by the Pennsylvania Commission on Crime and Delinquency, as well as several amendments to the Sentencing Code, see, e.g., 42 Pa.C.S. 9721(a)(6) (enumerating intermediate punishment as a sentencing option), 9729 (relating, inter alia, to an offenders eligibility to be sentenced to a county intermediate punishment program),

9. Act of Dec. 19, 1990, P.L. 799, No. 193 (as amended, 61 P.S. §§ 1101–1114) ("CIPA"). After Wegley was sentenced, CIPA was repealed and replaced by the Act of June 22, 2000, P.L. 345, No. 41, § 6 (as amended, 42 Pa.C.S. §§ 9801–9812). This new legislation is also called the County Intermediate Punishment Act. See 42 Pa.C.S. § 9801.

9763 (relating to terms and conditions available to the sentencing judge when imposing intermediate punishment), 9773 (relating to modification or revocation of an intermediate punishment sentence). Intermediate punishment is similar to probation in some respects. Both terms refer, broadly speaking, to a set of measures impossible by the court which restrict an offenders liberty but fall short of traditional incarceration. There is also a substantial overlap in the range of options available under either program, *compare, e.g.,* 42 Pa.C.S. § 9754(c) (conditions incident to probation) *with* 42 Pa.C.S. § 9763(b) (conditions incident to intermediate punishment), with home confinement representing an available condition in conjunction with either one, *see* 42 Pa.C.S. 9754(c)(14) (relating to confinement within ones residence as a condition of probation), 37 Pa.Code. 451.51(a)(1), (3) (relating to house arrest as an intermediate punishment option). Additionally, whether an offender is serving a sentence of probation or intermediate punishment, if he violates the assigned conditions, the *order of probation or intermediate punishment* (as the case may be) may be revoked and a new sentence imposed. *See* 42 Pa.C.S. §§ 9771(b) (relating to revocation of an order of probation), 9773(b) (relating to revocation of a sentence of intermediate punishment).[10]

Significantly, however, the General Assembly's intention in adopting intermediate punishment in this Commonwealth was not merely to establish another form of probation parallel to the one that already existed. Rather, as the Superior Court has explained:

**10.** In this regard, we note that Pennsylvanias escape statute is derived from the Model Penal Code and adopts the Code's exclusion of "supervision of probation or parole, or constraint incidental to release on bail" verbatim. *Compare* 18 Pa.C.S. § 5121(e) *with* MODEL PENAL CODE § 242.6(1). In expounding upon that exception, the commentary explains:

> The definition [of official detention] specifically excludes, however, "supervision of probation or parole, or constraint incidental to release on bail." Bail jumping is separately treated in Section 242.8, while conditional release on probation or parole carries its own sanctions.

MODEL PENAL CODE § 242.6 cmt. at 264 (Tentative Draft 1958).

The [L]egislatures intent was: to give judges another sentencing option which would lie between probation and incarceration with respect to sentencing severity; to provide a more appropriate form of punishment/treatment for certain types of non-violent offenders; to make the offender more accountable to the community; and to help reduce the county jail overcrowding problem while maintaining public safety.

*Commonwealth v. Philipp,* 709 A.2d 920, 921 (Pa.Super.1998) (quoting SENTENCING IN PENNSYLVANIA 1990: 1990–1991 ANNUAL REPORT OF THE PENNSYLVANIA COMMISSION ON SENTENCING 8). *See also* 61 P.S. § 1103(3) (reciting that one purpose of a CIPA program is to "fill gaps" in the local correctional systems).

Indeed, an offender is not eligible to be considered for intermediate punishment unless the court first determines that probation would be an inadequate response in view of the risk of re-offense, the defendants need of correctional treatment, or the seriousness of the crime. *See* 61 P.S. § 1104(b)(1) (stating that only "eligible offenders" may be sentenced to a county intermediate punishment program); 42 Pa.C.S. § 9729(b) (indicating that an "eligible offender" is a non-violent offender who would otherwise be sentenced to partial confinement pursuant to Section 9724, 42 Pa.C.S. § 9724, or total confinement pursuant to Section 9725, 42 Pa.C.S. § 9725); 42 Pa.C.S. §§ 9724, 9725 (implying that partial or total confinement may only be imposed where necessary and where probation would be inappropriate).[11] Thus, it is apparent that the Legislature views intermediate punishment as a distinct, and more severe, sanction than traditional probation.

▪ We observe, as well, that, under CIPA, counties are authorized to include within their intermediate punishment programs various distinct program elements, including both "[i]ntensive probation supervision," *see* 61 P.S. § 1104(a)(1)(i),

11. These eligibility requirements are substantively identical to those contained in the new CIPA legislation and related administrative regulations. *See* 42 Pa.C.S. §§ 9802, 9804(b)(1); 37 Pa.Code §§ 451.2, 451.52(a).

and "[h]ouse arrest and electronic monitoring," *see* 61 P.S. § 1104(a)(1)(iv).[12] That these two items are separately enumerated by the Legislature is further indication that intermediate punishment is neither coterminous with, nor a subset of, the original and primary legislative conception of probation. While we need not decide at this juncture whether a defendant subject to probation supervision as part of a sentence of intermediate punishment is shielded from criminal liability for escape pursuant to the escape statute's explicit exclusion regarding supervision of probation, we are confident that the General Assembly did not intend intermediate punishment as such to be considered the equivalent of probation for purposes of the Crimes Code generally. Accordingly, we hold that the escape statutes enumerated exception pertaining to probation does not encompass electronically monitored house arrest pursuant to a sentence of intermediate punishment.[13]

We recognize that our disposition here will mean that an offender in Wegleys position may potentially suffer over-

**12.** Similarly, under the present regulatory scheme, "[p]robation with daily reporting," as well as house arrest with electronic monitoring, are available as separate program elements. *See* 37 Pa.Code 451.51(a)(1–4).

Perhaps because of this use of the term probation as both distinct from, and an available element of, intermediate punishment, the caselaw reflects a variety of uses of the two terms in conjunction: at times probation is discussed as a form of intermediate punishment, *see, e.g., Commonwealth v. Parlante,* 823 A.2d 927, 928 (Pa.Super.2003) (stating that the defendant was sentenced to "one year of probation in the Intermediate Punishment Program"); *Commonwealth v. Simmer,* 814 A.2d 696, 698 (Pa.Super.2002) (reciting that the defendant was sentenced to two years of intermediate punishment which included 21 months of supervised probation), while in other places the view is reflected that the two measures are distinct and may be imposed in sequence, *see, e.g., Commonwealth v. Pattakos,* 754 A.2d 679, 680 (Pa.Super.2000) (indicating that the defendant was sentenced to sixty days of intermediate punishment followed by five years of probation). *See generally Commonwealth v. Serrano,* 727 A.2d 1168, 1169 n. 4 (Pa.Super.1999) (differentiating probation from intermediate punishment and criticizing the interchangeable use of the two terms).

**13.** This is not to say that all forms of intermediate punishment necessarily constitute detention for purposes of escape, but merely to stress that the explicit exclusions within that provision do not encompass intermediate punishment as a general matter.

lapping sanctions, including incarceration upon revocation of intermediate punishment, *see* 42 Pa.C.S. 9773(b); *Serrano,* 727 A.2d at 1170, as well as prosecution for the separate offense of escape. We are also aware that, as discussed, this result is not entirely consistent with the laws treatment of probationers, who may also be subject to independent sanctions for violation of the terms of their probation, *see* 42 Pa.C.S. § 9771, but are statutorily excluded from prosecution for escape. For the reasons expressed, however, it seems clear that intermediate punishment represents the more punitive sentencing option; thus, it is not unreasonable for the Legislature to attach more severe consequences to a violation of its terms.

In summary, then, when Wegley began serving a period of electronically monitored home confinement pursuant to his sentence of intermediate punishment, he was subject to official detention within the meaning of Section 5121(e) of the Crimes Code, 18 Pa.C.S. 5121(e). Moreover, the exclusions set forth in that provision have no application to the present case. Hence, Wegleys conduct of removing the monitoring device and fleeing from his residence falls within the Crimes Codes definition of escape. *See* 18 Pa.C.S. 5121(a). Thus, in the absence of a constitutional claim or contrary direction from the General Assembly, we conclude that the Superior Court did not err.

The order of the Superior Court is affirmed.

Justice NIGRO did not participate in the consideration or decision of this case.