Arthur BOOTH, Petitioner

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 23, 2004.

Decided Jan. 25, 2005.

---

1.  115 Pa.Cmwlth. 263, 539 A.2d 1389 (1988).

2.  107 Pa.Cmwlth. 213, 527 A.2d 1123 (1987).

Matthew P. Kelly, Wilkes–Barre, for petitioner.

Arthur R. Thomas, Asst. Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, LEAVITT, Judge, KELLEY, Senior Judge.

OPINION BY President Judge COLINS.

Arthur Booth petitions for review of an order of the Pennsylvania Board of Probation and Parole that denied Booth's request for relief captioned as a petition for administrative relief.

The pertinent facts are summarized as follows. The Board released Booth on February 11, 2002 on parole from an eighteen-year sentence for murder. Under the terms of his parole, Booth was required to spend a minimum of six months at the "Renewal Center." After he completed a program there, he was released to an approved residence on September 6, 2002. According to the Board, Booth also had to wear an electronic monitoring device for a thirty-day period from November 13, 2002 through December 13, 2002. During this thirty-day monitoring period, Booth had a curfew and had to stay in his home for part of each day. At the time of parole, Booth's sentence was set to expire on January 16, 2006. One of the terms of Booth's parole was that he refrain from consuming alcohol. Booth was arrested for driving under the influence of alcohol on March 15, 2003. Booth posted bail for this new charge on March 26, 2003, but remained in jail on the Board's detainer. The Board, by decision mailed May 20, 2003, revoked Booth's parole for his technical violation for drinking alcohol. On January 21, 2004, Booth pleaded guilty to two counts of driving under the influence of alcohol on March 15, 2003, for which he received a six-month county term, from which he was immediately paroled. The Board held a revocation hearing on March 10, 2004, and mailed an order to Booth on May 10, 2004 that both revoked his parole as a direct violator and recalculated his maximum term for his eighteen-year state sentence as having a new expiration date of March 1, 2007. This order gave Booth no credit for the thirty-day electronic-monitoring period.

Booth filed an administrative appeal and petition for administrative review on May 27, 2004, in which he challenged that (1) the Board had erred by not giving him credit for the thirty-day monitoring period, and (2) his 2004 conviction for driving under the influence of alcohol had retroac-

tively nullified the Board's May 20, 2003 decision recommitting him as a technical violator for consuming alcohol on March 13, 2003. The Board denied these petitions by a decision mailed June 22, 2004. Booth raises the following issues: (1) Whether the Board erred in denying him credit for the period of his electronic monitoring; and (2) Whether the Board erred in ordering separate terms of recommitment for technical and criminal parole violations that arose from the same incident.

■ With regard to the electronic monitoring, Booth argues that he is entitled to credit for this thirty-day period because Section 9760 of the Sentencing Code, 42 Pa.C.S. § 9760, provides that a defendant is entitled to credit for "time spent in custody," and electronic monitoring may constitute "custody." Booth cites *Commonwealth v. Chiappini*, 566 Pa. 507, 782 A.2d 490 (2001), for the proposition that the question of whether a person is in custody is fact sensitive, and the lack of evidence concerning the terms of Booth's monitoring warrants a remand to the Board for the creation of an evidentiary record.

The Board notes that the Supreme Court's decision in *Chiappini* constitutes only a plurality opinion.[1] More recently, the Supreme Court unanimously decided *Commonwealth v. Wegley*, 574 Pa. 190, 829 A.2d 1148 (2003). In that case, the Court was required to determine whether a defendant had committed escape when he left his home in which he was serving an intermediate punishment for forgery. "Detention" was a necessary element of the crime of escape. The Court first noted its earlier decisions in which it had held that, for the purpose of determining whether an individual is entitled to credit

under the Sentencing Code against a mandatory sentence of incarceration, time spent in home confinement could not be applied to the sentence, because "the comforts and amenities of the home are too far removed from the experience of institutional confinement to satisfy the Legislature's determination that certain offenses should carry serious punitive consequences." 574 Pa. at 196, 829 A.2d at 1151. The Court concluded that, because "Wegley was detained within the confines of his home as part of his sentence of punishment for forgery, and remained within the state's custody, he was subject to detention." 574 Pa. at 197, 829 A.2d at 1152. The Supreme Court noted that this result was "not entirely consistent with the law's treatment of probationers, who may also be subject to independent sanctions for violations of the terms of their probation. . . ." 574 Pa. at 201, 829 A.2d at 1154.

In cases addressing situations in which parolees have been confined to rehabilitation centers as conditions for parole, the courts have considered the particular facts in each case to be essential to making a determination on the issue of whether the detainee was in "custody." Despite the fact that the Supreme Court in *Wegley*, citing *Commonwealth v. Kriston*, 527 Pa. 90, 95–96, 588 A.2d 898, 900 (1991), has noted that home confinement is distinct from institutional housing, and the fact that the grant of credit to the defendant in *Chiappini* is the result of a plurality opinion, this Court has earlier indicated a concern that even electronic home monitoring may present such extreme limitations on liberty as to constitute custody, *see Jackson v. Pennsylvania Board of Probation and Parole*, 781 A.2d 239 (Pa.Cmwlth. 2001). Because the Board conducted no

---

1. In that case, Justices Flaherty and Newman joined in Justice Zappala's opinion. Justice Nigro, while concurring in the opinion, agreed to the result because of the equities in the case, and did not affirmatively join in Justice Zappala's reasoning.

evidentiary hearing regarding the circumstances of Booth's monitoring, we believe that remand is warranted for the Board to develop a record and render factual findings concerning the nature of the monitoring.[2]

■ However, we agree with the Board that the Supreme Court's decision in *Rivenbark v. Pennsylvania Board of Probation and Parole*, 509 Pa. 248, 501 A.2d 1110 (1985), does not apply with regard to Booth's contention that the Board erred by imposing backtime for both technical and criminal violations arising out of his conduct on March 15, 2003. As the Board notes, the Supreme Court in *Amaker v. Pennsylvania Board of Probation and Parole*, 525 Pa. 100, 576 A.2d 50 (1990), held that the Board did not err in imposing backtime for both technical and criminal violations where a parolee's act of drinking alcohol resulted in a criminal conviction for driving under the influence of alcohol.

Accordingly, we affirm that part of the Board's decision imposing backtime, but remand to the Board to conduct a hearing on the issue of the electronic monitoring of Booth.

### ORDER

AND NOW, this 25th day of January 2005, the order of the Pennsylvania Board of Probation and Parole is affirmed as to its determination of backtime, but the case is remanded for a hearing on the nature of Booth's electronic monitoring and the question of whether Booth's electronic monitoring constituted custody for the

purposes of determining the credit to which he is entitled.

Jurisdiction relinquished.

---

2. We note that in *Kriston,* the Court apparently had the benefit of some evidentiary information regarding the circumstances attending the home-monitoring of the defendant. The record in this case contains absolutely no information regarding the terms of Booth's monitoring other than the Board's comment in its brief that "Booth stayed in the comfort of his own home for part of each day subject to a curfew condition, and his observance of that curfew was electronically monitored." Brief, at page 2.