# Commonwealth v. Kreider

354

C.P. of Berks County, no. CP-06-CR-1260-2010.

*Adrian S. Shchuka*, for Commonwealth.
*Eric Taylor*, for defendant.

PARISI, *J.*, October 29, 2010—The defendant appeals his conviction for one count of escape[1] following a jury trial on July 28, 2010. On August 12, 2010, the defendant received a mitigated range sentence of 9 to 36 months of incarceration. On September 10, 2010, the defendant filed a notice of appeal. The defendant raises the following claims on appeal:

1. The evidence was insufficient to establish [the

___
1. 18 Pa.C.S.A. §5121.

defendant] was guilty of escape under 18 Pa. C.S.A. § 5121, where there was insufficient evidence that [the defendant] was in official detention as defined 18 Pa. C.S.A. § 5121(e) when [the defendant] was living in his own apartment and subject to reporting conditions.

2. The evidence was insufficient to establish that [the defendant] was guilty of escape under 18 Pa. C.S.A. § 5121, where assuming that [the defendant] was in official detention, there was insufficient evidence that [the defendant] removed himself from official detention or failed to return to official detention when [the defendant] merely failed to comply with the reporting conditions of his supervised release.

3. The trial court erred in denying [the defendant's] motion in limine to exclude referring to [the defendant] as a pre-releasee since this reference was a conclusion and should have been left for a jury to determine.

Defendant's concise statement of matters complained of on appeal, 9/22/10.

## FACTUAL BACKGROUND

In early February of 2010, the defendant was serving a flat 24 month sentence at Wernersville Community Corrections Facility (Wernersville), a facility that contracts with the Department of Corrections (DOC) and is staffed by state employees, pursuant to his acceptance into the State Intermediate Punishment Program (SIP)

following a theft conviction.[2] At this time he was residing at Wernersville on stage 3 of SIP. On February 16, 2010, the defendant was promoted to stage 4 of SIP.[3] The defendant had six months of his 24-month SIP sentence remaining when he was promoted to stage 4 as a non-resident inmate. SIP is a sentencing alternative that was passed by the Legislature and is implemented by the DOC. Participation in SIP is available for individuals convicted of drug and alcohol related offenses.

Under SIP, the defendant was supervised by DOC counselor Charles Knepp. SIP offers different levels of punishment with varying degrees of conditions and restrictions. After the defendant entered stage 3 of SIP he was labeled "pre-release" status because he was transferred from a state correctional institute to Wernersville, a community correction center, prior to the expiration of his maximum sentence date. Inmates on stage 4 SIP either live at a community corrections center, such as Wernersville or a private transitional residence.[4] SIP participants are included in the total number of offenders over which the DOC maintains control. Offenders participating in SIP are not eligible for parole on the SIP charges.

When the defendant entered stage 4 of SIP he was

2. See 61 Pa. C.S.A. §4101 et seq. All inmates admitted to SIP serve a flat 24 month sentence. The defendant's maximum date was June 26, 2010 (the same as his minimum date given the SIP's flat sentence structure).

3. The goal of transitional residence is to reintegrate offenders into the community. In stage 4, all treatment requirements have been satisfied, but DOC continues to supervise the inmates during their reintegration into the community.

4. However, parolees who are supervised by the Pennsylvania Board of Probation and Parole (the board) are also housed pursuant to separate programs, on the grounds of the Wernersville State Hospital.

considered a non-resident inmate, as he was no longer living in a community corrections center, but resided at a DOC-approved transitional residence. Although the defendant was permitted to live in a private transitional residence during stage 4, as a pre-release non-resident inmate he remained subject to the supervision of the DOC and was required to comply with numerous conditions. Prior to moving into his approved transitional residence, the defendant signed a Community Reorientation Plan (CRP) indicating Counselor Knepp had explained the conditions of stage 4 SIP to him and that he understood the conditions. The conditions the defendant was required to meet included: submitting to urinalysis and breathalyzer tests when ordered, attending one AA or NA meeting per week, continuing to take classes at Reading Area Community College and maintaining employment at the Caron Foundation, as well as producing documentation to substantiate his compliance and to report any changes. The defendant was also required to meet with Counselor Knepp at Wernersville every Tuesday and Friday during the first month of his stage 4 supervision and at least once per week after that time.

Pursuant to SIP guidelines, the defendant also signed a Transitional Residence Agreement (TRA) which listed his approved residence, an apartment at 124 South 4th Street in the City of Reading, and his employer, the Caron Foundation. The defendant further agreed to accept telephone calls from the Wernersville staff to verify his presence at the approved residence and his continued employment. Under this agreement the defendant was also placed on a daily curfew of 9:00 p.m. per SIP conditions.

He was prohibited from possessing any drugs or deadly weapons and from entering any bars or liquor stores. The defendant agreed to accept home visits from Wernersville staff and to return to Wernersville at least twice per week for progress review. Although the defendant could travel away from his approved residence, he had to remain in eastern Pennsylvania under SIP's conditions. Prior to the defendant signing the CRP and the TRA, Counselor Knepp explained to the defendant that he would be charged with escape if he violated his reporting requirements. Under SIP, the defendant was not eligible for parole during stage 4 of SIP. Stage 4 SIP offenders who violate conditions of SIP can be stepped-back to an earlier stage in the program or face expulsion from SIP and be resentenced on their underlying offenses.

After the defendant moved into his approved residence on February 16, 2010, his first required check-in with Counselor Knepp was at 10:00 a.m. on Friday, February 19, 2010. The defendant missed this check-in. Counselor Knepp called his residence and did not get a response. When Counselor Knepp arrived at work the following Monday, he did not have any phone messages from the defendant. Counselor Knepp did have a message from the defendant's employer indicating the defendant had missed work on that Saturday and Sunday without calling off. Counselor Knepp tried to reach the defendant by calling members of his family and his landlord. On February 23, 2010, after several days had passed without hearing from the defendant, Counselor Knepp informed his supervisor, Scott Pasquale, that the defendant failed to report. The DOC lodged a detainer against him. On February 24th,

Counselor Knepp emailed the defendant and told the defendant to call him. The defendant responded via email and said he would report to Wernersville on February 25th at 10:00 a.m. The defendant failed to report again. On the evening of February 26, 2010, the defendant turned himself in at Reading City Hall where he was handcuffed and taken into custody.

## DISCUSSION

The defendant's first and second claims on appeal relate to the sufficiency of the evidence with regard to his conviction for escape and will be considered together. The first issue raised by the defendant is that there was insufficient evidence that the defendant was in official detention for purposes of 18 Pa. C.S.A. § 5121(e) in order to sustain a conviction for escape.

The standard of review of a sufficiency of the evidence challenge is as follows:

In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Jones*, 636 A.2d 1184, 1189 (Pa. Super. 1994).

The reviewing court must determine whether the evidence was sufficient to have permitted the trier of fact to find

that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Davidson*, 860 A.2d 575, 580 (Pa. Super. 2004). The facts established by the Commonwealth need not be absolutely incompatible with the defendant's innocence so long as the evidence against the defendant is not "so weak and inconclusive that as a matter of law no probability of fact can be drawn from the circumstances." *Id.*

A person is guilty of escape if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific or limited purpose. 18 Pa. C.S.A. § 5121(a). For purposes of the offense of escape, official detention means "arrest, detention in any facility for custody of person under any charge or conviction of crime or alleged or found to be delinquent...or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole, or constraint incidental to release on bail." *Id.* at § 5121(e).

It is not necessary that an individual flee from the confines of a traditional prison's walls to unlawfully remove themselves from or fail to return to official detention for purposes of escape. *Commonwealth v. Scott*, 967 A.2d 995 (Pa. Super. 2009) (finding defendant was in official detention to support conviction for escape when he left community correction center on approved work pass and failed to return).

In *Commonwealth v. Wegley*, 574 Pa. 190, 196-200, 829 A.2d 1148, 1152-1154 (Pa. 2003), our Supreme Court

ruled that an individual serving a sentence of electronic monitoring home confinement pursuant to a sentence of county intermediate punishment is under official detention for purposes of escape. The court reasoned that the defendant in *Wegley* was "restrained from coming and going as he pleases [and] remain[ed] within the state's legal custody and under its control, regardless of his physical presence at his home." *Id.* at 197, 829 A.2d at 1152.

The court further determined that the enumerated exceptions in section 5121(e) for supervision of probation and parole did not apply. *Id.* at 200, 829 A.2d at 1154. In reaching this conclusion, the court recognized that the Legislature's intent in adopting intermediate punishment was "not to establish another form of probation parallel to the one that already existed," but to provide judges with a "sentencing option between probation and incarceration with respect to sentence severity..." *Id.* at 199, 829 A.2d at 1153. Since offenders are not eligible for intermediate punishment unless the sentencing court first determines probation would be inappropriate, the *Wegley* court found the Legislature intended intermediate punishment to be a separate and distinct sanction from traditional probation. *Id.*

While the court's holding in *Wegley* was limited to whether a specific form of intermediate punishment, i.e., electronic monitoring home confinement, constitutes official detention for purposes of the escape statute, its reasoning is nevertheless instructive to the issues in the present case. The evidence establishes that the defendant remained within the state's custody and control. The

defendant's transitional residence needed the approval of the DOC. Although the defendant could come and go from his residence during the daytime, he was required to be in the residence by 9:00 p.m. each night. He was not permitted to travel outside of the eastern Pennsylvania region. In addition, the defendant was required to report to Wernersville twice a week to meet with Counselor Knepp and review his progress. Other restrictions on the defendant's liberty included requirements to continue his courses at RACC and his employment at the Caron Foundation, as well as submitting to random drug and alcohol testing. Additionally, the DOC included the defendant in the total count of offenders under their control. Furthermore, the defendant could be expelled from the program and resentenced on the underlying conviction if he failed to comply. Given all of these circumstances, the defendant remained in official detention for purposes of escape when he was promoted to stage 4 of SIP and moved into a DOC approved transitional residence.

This court also finds the enumerated exceptions in section 5121(e) for supervision under probation and parole do not apply to stage 4 of the defendant's SIP sentence. As our Supreme Court's reasoning in *Wegley* illustrates, the Legislature intended the intermediate punishment programs to be separate programs from probation and parole.[5] Here, the record reveals that the defendant was not eligible for parole during stage 4 of SIP. Thus, the

---

5. While the *Wegley* case specifically discusses intermediate *punishment v. probation*, the reasoning can logically be extended to include parole.

defendant was not actually serving a sentence of probation or parole when he was promoted to stage 4 and failed to comply with the SIP conditions, including the reporting conditions. During stage 4 of SIP, the defendant remained supervised by the DOC, and not the board. As a result, the defendant's supervision under stage 4 of SIP was not the equivalent of probation or parole for purposes of official detention.

Had the Legislature intended all supervision under SIP to be exempt from the definition of official detention, it could have carved out such an exception in the statute as it did for probation and parole. However, it chose not to do so. Because the conditions the defendant faced during stage 4 of SIP were sufficiently restrictive and the statutory exceptions do not apply, the jury did not err in finding the defendant was subject to official detention under section 5121(e).

Furthermore, a review of the record reveals there was sufficient evidence to support the defendant's conviction for escape. Here, the defendant began living at his approved residence on February 16, 2010. He was required to report to Wernersville at 10:00 a.m. on Friday, February 19, 2010. The defendant failed to report as required and also missed his scheduled work assignments over that weekend. Despite efforts to contact the defendant, Counselor Knepp did not hear from him until he received an email on February 24th which indicated the defendant was going to report to Wernersville the following day at 10:00 a.m. The defendant failed to report again. He did not surrender to

law enforcement authorities until the evening of February 26th—seven days after his initial report date. Based on these facts, the evidence was sufficient to support the jury's finding that the defendant unlawfully removed himself from or failed to return to official detention in order to support his conviction for escape.

The defendant's final argument on appeal is that this court erred in denying his motion in limine to prohibit the Commonwealth's witnesses from referring to him as a "pre-releasee," as he argues this reference was a conclusion and should have been left for the jury to determine.

When reviewing a denial of a defendant's motion in limine, our appellate courts apply an abuse of discretion standard. *Commonwealth v. Zugay*, 745 A.2d 639, 645 (Pa. Super. 2000). Appellate courts will not disturb a trial court's ruling with regard to the admissibility of evidence unless the ruling "reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Commonwealth v. Owens*, 929 A.2d 1187, 1190 (Pa. Super. 2007).

There was no abuse of discretion in denying the defendant's motion in limine. Commonwealth witness, Tracey Smith, Chief of Treatment Programs for the DOC, testified that "pre-release" status is a term used by the DOC to refer to offenders who have been placed into the community-based phases of SIP prior to their maximum sentence date. She stated that SIP offenders labeled "pre-release" remain under the jurisdiction of the DOC. Ms. Smith also testified that the defendant was

labeled "pre-release" because he had been placed into the community-based phases of SIP during stages 3 and 4 of the program.

Ms. Smith's testimony established that the term "pre-release" was a term used by DOC officials to classify offenders in a particular stage of a sentencing program which the DOC administers. The defendant in this case was labeled a "pre-release" offender in accordance with the DOC's policy, as he had been placed into the community-based phases of SIP prior to his maximum sentence date. As Ms. Smith's testimony indicates, the fact that he was a non-resident during stage 4 of SIP did not change his "pre-release" status given the manner in which the DOC uses this term. Accordingly, this reference was not a conclusion that Ms. Smith drew from facts that were in dispute. The primary issue for the jury to decide in this case was not whether the defendant was a "pre-release" offender, rather it was whether the defendant's supervision under stage 4 of SIP constituted official detention. The commonwealth's reference to the defendant's "pre-release" status did not strip the jury of its fact-finding role in making this determination. *Commonwealth v. Persichini*, 558 Pa. 449, 454, 737 A.2d 1208, 1211 (Pa. 1999) (stating procedures at trial must be free of undue interference with the jury's role as the finder of fact).

Moreover, during the charge, this court instructed the jury that it is solely their job to determine the true facts concerning the escape charge against the defendant, and that it should not accept as true any evidence which it

finds incredible, even if it is uncontradicted. Given these instructions, any potential for prejudice was eliminated. Therefore, this court did not abuse its discretion in denying the defendant's motion.

For the foregoing reasons, this court respectfully requests that the defendant's appeal be denied.