J-S81044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| KRISTINA S. MANZI, | |
| Appellee | No. 465 MDA 2017 |

Appeal from the Order Entered February 23, 2017
in the Court of Common Pleas of York County
Criminal Division at No.: CP-67-CR-0005560-2016

BEFORE: PANELLA, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 27, 2018**

The Commonwealth of Pennsylvania appeals from the February 23, 2017 order dismissing the intermediate punishment violation of Appellee, Kristina S. Manzi. We affirm.

We take the factual and procedural history in this matter from our review of the certified record, and the trial court's May 18, 2017 opinion. On October 12, 2016, Appellee pleaded guilty to driving under the influence (DUI). The trial court sentenced her to serve six months of intermediate punishment[1] supervision, with sixty days of supervision on a Secure

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] We note that portions of the record appear to refer inaccurately to Appellee's "probation revocation." While "[i]ntermediate punishment is similar to probation in some respects[,] . . . [and there is] a substantial overlap in the

Continuous Remote Alcohol Monitoring (SCRAM) ankle monitor. "The company which provides the monitor . . . and which reviews and analyzes the reports created by [it] is known as Vigilnet. Vigilnet does not manufacture the monitors, those are manufactured by the SCRAM company." (Trial Court Opinion, 5/18/17, at 2).

On December 8, 2016, the York County probation department filed a petition for violation, alleging that a "confirmed tamper report was received from SCRAM for 11/13/2016 and 11/14/2016. Alcohol was detected during this time period." (Petition for Administrative Violation, 12/08/16, at 2). The petition noted that Appellee "was on an approved travel pass to Wisconsin during this time period. [Appellee] denies the alcohol use or tampering with the bracelet." (*Id.*). On January 17, 2017, Appellee filed a motion to dismiss the petition for violation.

On February 1, 2017, the trial court continued the intermediate punishment violation hearing "so that the Commonwealth could provide expert testimony with regard to reports generated by the [SCRAM] monitor which indicated tampering." (Trial Ct. Op., at 1-2). Specifically the court ordered that "everybody involved in [the SCRAM] report is going to show . . . . We're

_____

range of options available under either program," intermediate punishment is not the equivalent of probation. **Commonwealth v. Wegley**, 829 A.2d 1148, 1152–53 (Pa. 2003); **see also Commonwealth v. Serrano**, 727 A.2d 1168, 1169 n.4 (Pa. Super. 1999) (emphasizing differences between probation and intermediate punishment).

going to have a full evidentiary hearing. We won't have any hearsay. We'll have first person testimony . . . ." (N.T. Hearing, 2/01/17, at 10-11).

On February 23, 2017, the trial court conducted the intermediate punishment violation hearing.

. . . The Commonwealth provided expert testimony from James Kelly, a Vigilnet employee of approximately five and a half years, who testified with regard to how reports or data generated by the monitors are interpreted to determine alcohol use and tampering. (*See* N.T. Hearing, 2/23/17, at 10-13).

Mr. Kelly was not admitted as an expert to testify with regard to the technology or underlying science involved with the SCRAM monitor. (*See id.* at 16). Mr. Kelly stated that the monitors are calibrated by the manufacturer before being placed into service by Vigilnet, and that they are recalled and sent back to the manufacturer if they require recalibration. (*See id.* at 20). Once attached, the monitor establishes baseline readouts for each individual. There is a baseline number established trans-dermally for alcohol using a pump in the bracelet, as well as a voltage number based on infrared sensors which determine the normal distance between the bracelet and [Appellee's] leg. Once the initial baseline is established, the monitor provides readings every thirty minutes to determine if there is alcohol use and/or tampering. (*See id.* at 22).

If the monitor indicates potential tampering, such as placing a sock or other object between the leg and the monitor, the information is flagged and sent to the manufacturer via a server for review. If an individual at the manufacturer determines that the data indicating tampering is confirmable, it is then forwarded to a committee of three to five people for further review. If the data is reconfirmed by the committee, it is sent back to Vigilnet via server stating that there was or was not a confirmable event. (*See id.* at 24-26). The [p]robation [o]ffice is then informed of the violation. Mr. Kelly described the criteria used to determine if data should be flagged for further review for possible tampering. He stated that a voltage deviation over or under the baseline number over an eight hour time period, without an indication of alcohol use, would be cause for a flag and further review. The same voltage deviation along with an indication of alcohol use over

- 3 -

a three hour time period would also be cause for flagging and review. (*See id.* at 26-27). Mr. Kelly confirmed that [Appellee] was informed of how the SCRAM monitor works, how violations are determined, and the penalties for violation, and that [Appellee] signed an acknowledgement that she received that information before beginning to use the monitor. (*See id.* at 28-31). Mr. Kelly also confirmed that he compiled documentation indicating the two alleged tampering incidents at issue in this matter, and that the [p]robation [o]ffice was informed of the incidents. (*See id.* at 34).

\*    \*    \*

Under cross-examination, Mr. Kelly stated that he did not test or calibrate the bracelet monitors before placing them into service. The testing and calibration is performed by the manufacturer. (*See id.* at 52-53). Mr. Kelly further stated that the data he receives regarding a tampering event first goes through a server, then to an individual at a testing company known as "AMS", then to a review committee, then to Mr. Kelly or another employee of Vigilnet confirming that a tampering event occurred. He could not say who received the data at AMS or who was on the review committee. (*See id.* at 56-57). He also could not confirm if this review procedure occurred at all with regard to [Appellee's] monitor. (*See id.* at 58). Mr. Kelly's only involvement with the review process is to receive the data indicating a confirmed tampering event. (*See id.* at 59). He stated that an alcohol reading could be caused by spilling a product with alcohol on the leg with the monitor, and that voltage deviations could be caused by a sock or other item of clothing moving between the leg and the monitor. (*See id.* at 61-63). In this case, there was no determination of [Appellee's] employment or work schedule which might make an alcohol reading more likely, such as employment as a bartender. (*See id.* at 74-75). The report of the alleged tampering events was sent directly from AMS to [p]robation, not through Mr. Kelly. Mr. Kelly did not review the report sent from AMS or speak with anyone at AMS about the report, although he stated that the report would contain the same data that he received. (*See id.* at 75-76).

[Appellee's] probation officer, Jackie Farmer, also testified briefly. She stated that she received the report of the alleged violation from November 2016, but that [Appellee] denied consuming alcohol. [Appellee] was travelling during that time period and told Officer Farmer that the tampering report could

- 4 -

have been caused by airport security. Officer Farmer did not have sufficient experience with the monitoring bracelets to state whether something such as airport security could cause a tampering report. (*See id.* at 92-95).

(Trial Ct. Op., at 2-5) (record citation formatting provided).

At the conclusion of testimony, Appellee moved to dismiss. The court concluded that the Commonwealth had failed to meet its burden of proving the alleged violation by a preponderance of the evidence, and granted Appellee's motion. Specifically, it explained that, "[i]t's the fact that there is just not enough here, because I don't have testimony on the science, and the science underpins it all. If you had brought somebody in here from the manufacturer, we might well have a whole different outcome." (N.T. Hearing, 2/23/17, at 96). The court reasoned that that its "decision may not be based upon conjecture, speculation, or guess[, and it] would have to engage in one of those three to be able to make a finding in favor of the Commonwealth." (*Id.* at 97). This timely appeal followed.[2]

The Commonwealth presents three questions on appeal.

I. Did the trial court err in *sua sponte* holding a **Frye**[3] hearing at [Appellee's] [intermediate punishment] [v]iolation [h]earing without prior notice to the parties, regarding the SCRAM monitor technology, which is widely accepted within the scientific community and is not novel scientific technology?

---

[2] The Commonwealth filed its statement of errors complained of on appeal on April 4, 2017. The trial court entered its opinion on May 18, 2017. **See** Pa.R.A.P. 1925.

[3] **Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923).

II. Did the trial court erroneously disregard the SCRAM evidence presented at [Appellee's] [intermediate punishment] [v]iolation [h]earing that confirmed that [Appellee] tampered with her SCRAM monitor, proving that [Appellee] violated the terms of [intermediate punishment]?

III. Did the trial court abuse its discretion in dismissing [Appellee's] [intermediate punishment] violation?

(Commonwealth's Brief, at 4).

In its first issue, the Commonwealth argues that the court improperly conducted a *Frye* hearing. (*See* Commonwealth's Brief, at 14-28). Specifically, it claims that it "was under no obligation to present expert testimony to explain the scientific workings of the SCRAM bracelet[,]" and argues that the court improperly conducted a *Frye* hearing because it did so without notice to the Commonwealth. (*Id.* at 19). We disagree.[4]

Preliminarily, we note that, as the trial court observed, the Commonwealth has waived this argument for failure to raise it before the trial court. *See* Pa.R.A.P. 302(a); (*see also* Trial Ct. Op., at 6-7). During the

_____

[4] We observe that, at times, the Commonwealth's argument does not accurately reflect the record. For example, the Commonwealth asserts that the trial "court erroneously ruled that there was a lack of scientific evidence pursuant to *Frye*, without allowing the Commonwealth an opportunity to present rebuttal evidence as allowed by *Frye*." (Commonwealth's Brief, at 20). However, the record clearly reflects that the trial court admitted the SCRAM report in question and permitted the Commonwealth's expert, Mr. Kelly, to testify to the report to the extent he was familiar with it. (*See* N.T. Hearing, 2/23/17, at 14-16, 87). The court reasoned that the question with respect to its ultimate decision "distills out to, is there a sufficient body of evidence brought forward by this witness under cross-examination that gives us an adequate foundation of reliability . . . so as to allow us to make a determination one way or the other." (*Id.* at 86). Significantly, when the court dismissed the violation it ruled that the Commonwealth failed to prove the violation by a preponderance of the. (*See id.* at 96).

- 6 -

intermediate punishment violation hearing, the Commonwealth did not object to the court's holding an evidentiary hearing, and, in fact, placed its witness on the stand in an attempt to prove that Appellee violated the terms of her intermediate punishment. The Commonwealth is prohibited from raising on appeal that which it did not raise before the trial court. (*See* Pa.R.A.P. 302(a)). Moreover, the Commonwealth's first issue would not merit relief.

> As a general rule, this Court's standard of review of a trial court's evidentiary ruling, including a ruling whether expert scientific evidence is admissible against a *Frye* challenge, is limited to determining whether the trial court abused its discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Dengler*, 890 A.2d 372, 379 (Pa. 2005) (citations and quotation marks omitted).

Pennsylvania Rule of Evidence 702 concerns admissibility of expert testimony for scientific evidence.

### Rule 702.  Testimony by Expert Witnesses

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in
the relevant field.

Pa.R.E. 702. "This Court has noted that the **Frye** test, which was adopted in Pennsylvania in **Commonwealth v. Topa**, 471 Pa. 223, 369 A.2d 1277 (1977), is part of Rule 702." **Dengler**, **supra** at 380 (internal quotation marks omitted) (citing **Grady v. Frito-Lay, Inc.**, 839 A.2d 1038 (Pa. 2003)).

Our Supreme Court has emphasized that, "the proponent of expert scientific evidence bears the burden of establishing all of the elements for its admission under Pa.R.E. 702, which includes showing that the **Frye** rule is satisfied." **Grady**, **supra** at 1045. "Whether a witness is qualified to render opinions and whether his testimony passes the **Frye** test are two distinct inquiries that must be raised and developed separately by the parties, and ruled upon separately by the trial courts." **Id.** at 1045-46 (citation and footnote omitted).

In the instant case, the trial court continued the first intermediate punishment violation hearing and clearly told the parties: "[E]verybody involved in [the SCRAM] report is going to show up the next time we're going to have the hearing. We're going to have a full evidentiary hearing. We won't have any hearsay. We'll have first person testimony . . . ." (N.T. Hearing, 2/01/17, at 10-11). Thus, the Commonwealth was aware that the trial court was going to conduct a full evidentiary hearing with respect to the SCRAM report. Accordingly, even if properly raised, the Commonwealth has not met its burden of proving that the trial court's decision was "result of manifest

- 8 -

unreasonableness, or partiality, prejudice, bias, or ill-will[.]" ***Dengler***, ***supra*** at 379. Therefore, the Commonwealth's its first issue would not merit relief.[5]

In its second issue, the Commonwealth argues that the trial court abused its discretion when it "wholly disregarded testimony of Mr. [Kelly], an expert in SCRAM monitor data, who confirmed that [Appellee] tampered with her SCRAM bracelet." (Commonwealth's Brief, at 29; ***see id.*** at 29-37). Specifically, it argues that, because Mr. Kelly confirmed that Appellee tampered with her SCRAM bracelet, the Commonwealth met its burden of proof that Appellee had violated her intermediate punishment, and the trial court abused its discretion in dismissing the violation. We disagree.

This Court applies the same scope and standard of review to evaluation of a revocation of intermediate punishment proceeding as it does for a revocation of probation hearing. ***See Commonwealth v. Kuykendall***, 2 A.3d 559, 563 (Pa. Super. 2010). "Revocation . . . is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of

_____

[5] Furthermore, the Commonwealth offers no binding authority to support its claim that SCRAM monitors are not novel science and, thus, the ***Frye*** test is inapplicable. (***See*** Commonwealth's Brief, at 19-26). Although arguing that certain parts of the SCRAM monitor system, infrared lasers and transdermal alcohol detection, are widely accepted within the scientific community, the Commonwealth fails to prove that SCRAM monitors are not novel scientific evidence. (***See id.***). Thus, it has not met its burden under our standard of review, to show that the trial court abused its discretion in conducting a full evidentiary hearing with respect to the SCRAM monitor report. ***See Dengler***, ***supra*** at 379.

discretion." ***Commonwealth v. Perreault***, 930 A.2d 553, 558 (Pa. Super. 2007), *appeal denied*, 945 A.2d 169 (Pa. 2008) (citations omitted); ***see also*** Pa.R.Crim.P. 708 (rule concerning violation of probation, intermediate punishment, or parole hearings). The Commonwealth bears the burden of proving an intermediate punishment violation by a preponderance of the evidence.[6] ***See Commonwealth v. Castro***, 856 A.2d 178, 180 (Pa. Super. 2004).

Instantly, the Commonwealth contends that the evidence was sufficient to prove a violation of Appellee's intermediate punishment. A challenge to the sufficiency of evidence is

> a question of law subject to plenary review. We must determine whether the evidence admitted . . . and all reasonable inferences drawn therefrom, when viewed in the light most favorable to [Appellee] as the verdict winner, is sufficient to support all elements of the offenses. A reviewing court may not weigh the evidence or substitute its judgment for that of the trial court.

***Perreault***, ***supra*** at 558 (citation omitted).

---

[6] The Commonwealth asserts that it may use *prima facie* evidence to prove a violation by a preponderance of the evidence. (***See*** Commonwealth's Brief, at 16, 18). However, in support of this argument, the Commonwealth relies on two cases wherein this Court held that *prima facie* evidence would be sufficient, but **only where the defendant did not challenge the violation**. (***See id.***) (citing ***Commonwealth v. Gochenaur***, 480 A.2d 307, 309 (Pa. Super. 1984) (*Prima facie* evidence of simple assault proved violation by preponderance of evidence where Appellant corroborated he was bound for court on simple assault charge); ***Commownealth v. Kates***, 305 A.2d 701, 708 (Pa. 1973)). Here, Appellee opposed the tampering violation; therefore the *prima facie* standard does not apply.

Here, the trial court explained that it "did not ignore such evidence, but only found that **the evidence and testimony was insufficient to meet the Commonwealth's burden of proof** regardless of whether we were applying *Frye* standards." (Trial Ct. Op., at 7-8) (emphasis added). The court explained that

> . . . presenting a witness, Mr. Kelly, who has no knowledge of the underlying technology or science of the SCRAM bracelets, testified as to what unnamed individuals or committee members reported to him constitutes inadmissible hearsay and is **insufficient to met the Commonwealth's burden of proof.** Although the burden of proof is lower for the Commonwealth in [intermediate punishment] violation proceedings, we found that **the Commonwealth failed to meet this burden**. *See* [*Commonwealth*] *v. Sims*, 770 A.2d 346, 350 (Pa. Super. 2001) ("Unlike a criminal trial where the burden of proof rests with the Commonwealth to establish all the requisite elements of the charged offenses beyond a reasonable doubt, at a violation of probation/parole hearing the Commonwealth need only prove that a violation occurred by a preponderance of the evidence.")[.]

(Trial Ct. Op., at 6) (emphases added).

Moreover, the court concluded that Mr. Kelly's

> testimony was simply insufficient to meet the Commonwealth's burden since he was not able to articulate the likelihood of an accidental obstruction to an actual degree of probability that might allow the trial court to determine if the burden had been met. Mr. Kelly was only able to state that "anything is possible." (N.T. Hearing, 2/23/17, at 64).

(*Id.* at 8) (record citation formatting provided).

Upon review, we discern no abuse of discretion. **See Perreault**, **supra** at 558. We conclude that, viewing the evidence in the light most favorable to Appellee, as verdict winner, the trial court properly considered all evidence

before it and found, based on the facts of this case, that the Commonwealth failed to prove by a preponderance of the evidence that Appellee violated the terms of her intermediate punishment. Accordingly, the Commonwealth's second issue does not merit relief.

The Commonwealth's third issue, claiming that the trial court abused its discretion when it dismissed Appellee's intermediate punishment violation because the Commonwealth proved the violation by a preponderance of the evidence, merely restates the arguments in its second issue and accordingly does not merit relief. (*See* Commonwealth's Brief, at 38-40).

Therefore, because the Commonwealth has not shown that the trial court abused its discretion in either conducting a full evidentiary hearing, or in concluding that the Commonwealth failed to meet its burden, we affirm the order of the trial court dismissing the intermediate punishment violation.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/27/2018